[Sac. No. 7995. In Bank. Aug. 14, 1974.]

LEWIS GORDON et al., Plaintiffs and Appellants, v.
THE JUSTICE COURT FOR THE YUBA JUDICIAL DISTRICT
OF SUTTER COUNTY et al., Defendants and Respondents;
THE PEOPLE, Real Party in Interest and Respondent.

324

## COUNSEL

Burton D. Fretz, William D. Farber, Burton Danziger, Al Meyerhoff, Edgar A. Kerry, James D. Lorenz, Jr., Philip J. Jimenez and Charlotte M. Fischman for Plaintiffs and Appellants.

Marshall J. Hartman and Nancy E. Goldberg as Amici Curiae on behalf of Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., and Jack R. Winkler, Chief Assistant Attorneys General, William E. James and Doris H. Maier, Assistant Attorneys General, Daniel J. Kremer, Nelson P. Kempsky, Charles P. Just, Arnold O. Overoye and Eddie T. Keller, Deputy Attorneys General, for Defendant and Respondent and for Real Party in Interest and Respondent.

## OPINION

**BURKE, Acting C. J.**—We are confronted here with the question whether the current practice of allowing non-attorney judges to preside over criminal trials of offenses punishable by a jail sentence, as is the situation in over

60 percent of the justice courts in California, violates the constitutional rights of the defendants in those proceedings. We have decided that this practice does violate the due process clause of the Fourteenth Amendment of the United States Constitution, and that henceforth defendants in such courts are entitled to have an attorney judge preside over all criminal proceedings involving charges which carry the possibility of a jail sentence, unless such right is waived by the defendant or his counsel.

Petitioner Gordon was brought before a non-attorney judge of the Yuba City Justice Court to stand trial for disturbing the peace and failing to disperse (Pen. Code, §§ 415, 416). Similarly, petitioner Arguijo was brought before a non-attorney judge of the Grover City Justice Court to stand trial for driving under the influence of alcohol (Veh. Code, § 23102, subd. (a)). Both petitioners sought extraordinary pretrial relief, on behalf of themselves and all others similarly situated, contending that it is unconstitutional to compel them to stand trial on criminal charges before non-attorney judges. The superior court sustained a demurrer without leave to amend and petitioners have appealed.[1]

Presently in California each county is divided into municipal court and justice court districts with districts of more than 40,000 residents having a municipal court and those of 40,000 or less having a justice court. (Cal. Const., art. VI, § 5.) The Legislature is vested with complete authority over the organization and jurisdiction of the justice courts (*id.*), and has provided that these courts have jurisdiction over misdemeanors punishable by a fine of $1,000 or less or a maximum term of one year in county jail or both (Pen. Code, § 1425).[2]

---

[1]Since the filing of this appeal, both Gordon and Arguijo pleaded guilty to lesser charges before attorney judges. These events, however, have not rendered the case moot, for according to well established principles, "if a pending case poses an issue of broad public interest that is likely to recur, the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." (*In re William M.,* 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737], see also *Moore* v. *Ogilvie,* 394 U.S. 814 [23 L.Ed.2d 1, 89 S.Ct. 1493]; *Ballard* v. *Anderson,* 4 Cal.3d 873 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; *Zeilenga* v. *Nelson,* 4 Cal.3d 716 [94 Cal.Rptr. 602, 484 P.2d 578]; *DiGiorgio Fruit Corp.* v. *Dept. of Employment,* 56 Cal.2d 54 [13 Cal.Rptr. 663, 362 P.2d 487].)

[2]Justice courts also have jurisdiction over various types of civil cases (see Code Civ. Proc., § 112). The issue of the constitutionality of permitting a non-attorney judge to preside over these civil matters (and over "infractions" punishable by fine only) is not before us and we express no opinion on this subject. We also note that a judge of a justice court is authorized to act as a magistrate (Pen. Code, § 808) with power to conduct preliminary hearings in felony cases and to order the defendant to stand trial for his offense (Pen. Code, § 858 et seq.) Although petitioners were not charged with felony offenses and, accordingly, the question is not before

The judges of justice courts are elected in their counties or districts at general elections (Cal. Const., art. VI, § 16, subd. (b)) to serve for a six-year term (Gov. Code, § 71145). The Legislature, which also prescribes the necessary qualifications of justice court judges, has declared that to be eligible for such a position the candidate must either (1) be a member of the State Bar or (2) have passed a qualifying examination prescribed by the Judicial Council or (3) have been an incumbent in a justice court or a predecessor court at the time the Reorganization Act of 1950 became operative and have retained that position continuously. (Gov. Code, § 71601.)[3]

Petitioners assert that to require a defendant to stand trial before a non-attorney judge in any case in which the defendant faces a potential jail sentence violates his right to due process of law.[4] We agree.

The justice of the peace judicial system, from which our current justice courts trace their ancestry, originated in England under Edward III in the early part of the 14th century. In that period and throughout the early part of this country's history, compelling reasons existed for allowing laymen to act as judges in the few simple matters that came within the jurisdiction of justices of the peace. There were not enough attorneys in rural areas to serve as justices of the peace, and a prohibition against non-attorney judges might have deprived many areas of any eligible judges. Travel and communication were slower and more burdensome, making it harder and even impossible for an attorney judge who normally resided and heard cases in a more populous urban area to preside over matters which arose in rural areas. (See generally Smith, *The Justice of the Peace System in the United States*, 15 Cal.L.Rev. 118.) Furthermore, it is likely that the trial of a criminal case was far less complex than in modern times. Even misdemeanor trials are now apt to involve com-

us, we fail to see any distinction of consequence between misdemeanor trials involving a potential jail sentence, and felony preliminary examinations which present similar potential loss of freedom. Thus, a strong argument could be made that an attorney judge is essential to afford the defendant due process during the preliminary hearing.

[3]According to statistics furnished us by the Judicial Council, as of March 1974 there were 215 authorized judgeships in justice courts. Eighty-one of these positions were held by attorneys, 108 were held by laymen who have passed the qualifying examination given by the Judicial Council, 19 were held by laymen incumbents from the old system, and there were 7 vacancies.

[4]Petitioners also raise other objections to the non-attorney judge system, including an equal protection challenge. However, as we agree with their due process argument we need not discuss their other contentions.

plicated issues of law and procedure, requiring an expertise which a layman cannot be assumed to possess.

Whatever the justification for permitting laymen to preside over criminal trials in the 1800s, it is a well-recognized principle that even long-standing practices are subject to constitutional scrutiny and must meet the advancing standards of due process. As Mr. Justice Frankfurter noted in *Wolf* v. *Colorado*, 338 U.S. 25, 27 [93 L.Ed. 1782, 1785, 69 S.Ct. 1359], "Due process of law thus conveys neither formal nor fixed nor narrow requirements. It is the compendious expression for all those rights which the courts must enforce because they are basic to our free society. But basic rights do not become petrified as of any one time, even though, as a matter of human experience, some may not too rhetorically be called eternal verities. It is of the very nature of a free society to advance in its standards of what is deemed reasonable and right. Representing as it does a living principle, due process is not confined within a permanent catalogue of what may at a given time be deemed the limits or the essentials of fundamental rights." (See also *Randone* v. *Appellate Department*, 5 Cal.3d 536, 551-552 [96 Cal.Rptr. 709, 488 P.2d 13]; *Blair* v. *Pitchess*, 5 Cal.3d 258, 279, fn. 13 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]; cf. *Brown* v. *Board of Education*, 347 U.S. 483 [98 L.Ed. 873, 74 S.Ct. 686, 38 A.L.R.2d 1180]; *Brown* v. *Merlo*, 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212]; *Zeilenga* v. *Nelson, supra*, 4 Cal.3d 716; *In re Antazo*, 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999].)

The practice of allowing a layman to be a judge in a criminal proceeding must be scrutinized in the light of modern standards and conditions. There has been a vast increase in the number of attorneys in all areas of the state and substantial improvement in roads, highways and transportation. Furthermore, as discussed more fully below, the increased complexity of criminal law and criminal procedure has greatly enhanced the probability that a layman will be unable to deal effectively with the complexities inherent in a criminal trial.

██ We note at the outset that we are dealing with a defendant's fundamental right to a fair trial,[5] a right which extends to *all* criminal trials, regardless of the nature of the crime with which defendant is charged. (*Argersinger* v. *Hamlin*, 407 U.S. 25 [32 L.Ed.2d 530, 92 S.Ct. 2006].)

---

[5] "A fair trial in a fair tribunal is a basic requirement of due process." (*In re Murchison*, 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623].)

In determining in advance of trial if a particular procedure or proceeding comports with the demands of due process, the courts have sought to ascertain whether in the absence of relief a *reasonable likelihood* exists that a fair trial cannot be had. (*Maine* v. *Superior Court*, 68 Cal.2d 375 [66 Cal.Rptr. 724, 438 P.2d 372]; *Frazier* v. *Superior Court*, 5 Cal.3d 287 [95 Cal.Rptr. 798, 486 P.2d 694]; see *Sheppard* v. *Maxwell*, 384 U.S. 333, 363 [16 L.Ed.2d 600, 620, 86 S.Ct. 1507].)[6]

■ Moreover, with respect to post-trial review, the United States Supreme Court has recognized for many years that the very character of certain procedures make it impractical to establish the degrees of prejudice which has resulted therefrom. (See *Hamilton* v. *Alabama*, 368 U.S. 52 [7 L.Ed.2d 114, 82 S.Ct. 157], and cases cited *infra*.) In these circumstances the defendant need not show that he was *actually* prejudiced during his trial in order to establish a denial of due process of law; it is enough if he can show there was a reasonable *probability* of prejudice. (See *Ward* v. *Village of Monroeville*, 409 U.S. 57 [34 L.Ed.2d 267, 93 S.Ct. 80] [traffic offender tried before a mayor of town which was heavily dependent on traffic fines]; *Sheppard* v. *Maxwell*, *supra*, 384 U.S. 333 [pretrial publicity]; *Estes* v. *Texas*, 381 U.S. 532 [14 L.Ed.2d 543, 85 S.Ct. 1628] [televised trials]; *Turner* v. *Louisiana*, 379 U.S. 466 [13 L.Ed.2d 424, 85 S.Ct. 546] [use of same deputy sheriffs as both jury custodians and as key prosecution witnesses]; *In re Murchison*, *supra*, 349 U.S. 133 [contempt trial before same judge who presided at the grand jury hearing during which alleged contempt occurred]; *Tumey* v. *Ohio*, 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243] [judge receiving compensation from fines he imposed].)

■ We do not suggest that a fair criminal trial is impossible in a court presided over by a non-attorney judge, but only that the likelihood of such a trial would be substantially diminished. As mentioned above, a layman who is not an incumbent justice court judge may qualify as a candidate for election to that court by passing the three-hour examination given by the Judicial Council. We have scrutinized the most recent Judicial Council examination and, although it extends over a wide area of the law, the examination is far less rigorous than the two-and-one-half

---

[6]In *Frazier* we stated, "Under the *Maine* rule, a change of venue must be granted when the defendant shows, as here, 'a reasonable likelihood that in the absence of such relief, a fair trial cannot be had.' . . . '[R]easonable likelihood' of prejudice does not mean that prejudice must be 'more probable than not' . . . a defendant is entitled to such relief [change of venue] 'not only when a preponderance of circumstances calls for such a result, but also whenever a defendant has shown *even* a "reasonable likelihood" that he will not receive a fair trial.'" (5 Cal.3d at pp. 294-295.)

days State Bar examination required of one seeking to become an attorney. We also note the absence of any requirement of college or law school education[7] in order to qualify as a justice court judge.

The United States Supreme Court has recognized that the legal and constitutional issues involved in a misdemeanor case may be as complex as those involved in a trial for a more serious offense. (See *Argersinger* v. *Hamlin, supra,* 407 U.S. 25, 33 [32 L.Ed.2d 530, 536].) There is little guarantee that the background of a non-attorney judge will have prepared him to recognize these issues and resolve them according to established legal principles.[8]

A judge may encounter many difficult legal problems in the course of a misdemeanor trial. For example, defendant Gordon was charged with disturbing the peace and failure to disperse at a political demonstration in front of a local sheriff's office. Even if a non-attorney judge would recognize the relevant First Amendment issues, he probably would have difficulty determining whether Gordon had engaged in protected activities.

---

[7]A study shows that in 1972, 37 percent of non-attorney justice court judges had no education beyond high school; at least 13 of these judges has not completed high school. (Hennessy, *Qualification of California Justice Court Judges: A Dual System,* 3 Pacific L.J. 439, 445-446.)

The Commission on Standards of Judicial Administration of the American Bar Association emphasizes the importance of a properly educated judiciary. In its Standards Relating to Court Organization (Final Draft 1974), section 1.21, subdivision (a), requires that all judges "should have a broad general and legal education and should have been admitted to the bar." (P. 29.) The Commentary on section 1.21 states that "Selecting competent judges is the most important aspect of establishing and maintaining an excellent court system. . . . [¶] They should have a breadth of education sufficient to understand the variety of problems that come before the courts. They should be professionally qualified as lawyers so that they can interpret and apply the law competently." (*Id.,* pp. 31-32.)

[8]Our analysis is supported by the findings of an extensive study commissioned by the Judicial Council (the same body that prepares the qualifying test for non-attorney judges). The study found that "Many Justice Courts are still staffed by lay judges who often are unfamiliar with or inexperienced in the complexities of modern court procedure and adjudication activities." (Booz, Allen & Hamilton, Inc., Unified Trial Court Feasibility Study, p. 24.) "The use of lay judges to handle cases requiring legal background and training, insights and attitudes . . . can create problems in the adjudication of cases. The need for legal training for judges has become increasingly important in view of the complexities brought about by recent court decisions regarding the constitutional rights of criminal defendants. The technicalities of the law play a prominent role today in the legal process." (Booz, Allen & Hamilton, Inc., Cal. Lower Court Study, pp. 27-28.)

The report recommended establishing a single type of lower court "to insure that a full-time attorney judge is available for each judicial district." (Cal. Lower Court Study, p. 25.)

Equally difficult legal problems may arise with respect to evidentiary matters in a misdemeanor trial. For example, defendant Arguijo was charged with drunken driving. Had his attorney challenged either the accuracy of the scientific apparatus used to measure blood alcohol, or the qualifications of those administering the test, it is probable a non-attorney judge would have been unable to rule properly on the admissibility of the evidence.

A justice court judge must also be competent to preside over jury trials.[9] Sophisticated determinations regarding the *voir dire* of jurors, the prejudicial effect of evidence and argument, and the submission of proper jury instructions will be required. Legal training may often be necessary to deal adequately with these complex and technical problems.

A further responsibility of a justice court judge concerns the acceptance of guilty pleas. The judge must determine that the accused understands the nature of the charge, the elements of the offense, and the consequences of his guilty plea. Moreover, the judge must determine that there exists a basis in fact for the plea, and that the plea is freely and voluntarily made. (*Boykin* v. *Alabama*, 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *Mills* v. *Municipal Court*, 10 Cal.3d 288 [110 Cal.Rptr. 329, 515 P.2d 273]; *In re Tahl*, 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449]; *In re Johnson*, 62 Cal.2d 325 [42 Cal.Rptr. 228, 398 P.2d 420]; Pen. Code, § 1192.5.) We are not convinced that a non-attorney judge will be able to perform these critical duties satisfactorily.

We are likewise concerned that a non-attorney judge may lack the expertise necessary to make proper sentencing decisions. As we noted recently, "If a trial judge lacks the necessary expertise to make proper sentencing decisions, the answer does not lie in conditioning its exercise upon the consent of the prosecutor but in better trained and selected judges . . . ." (*People* v. *Navarro*, 7 Cal.3d 248, 259, fn. 7 [102 Cal. Rptr. 137, 497 P.2d 481].)

The Attorney General argues that the defendant's right to appeal from a justice court judgment is a sufficient guarantee of due process. We disagree, for as we stated in *Maine* v. *Superior Court, supra,* 68 Cal.2d 375, 378, "Availability of appeal often falls short of sufficient protection [of a defendant's fundamental right to a fair trial], since 'the burden, expense and delay involved in a trial render an appeal from an eventual judgment an inadequate remedy.' (*Brown* v. *Superior Court*

---

[9]Under article I, section 7, of the state Constitution, defendant has a right to trial by jury in all criminal cases, regardless of the severity of the potential punishment.

(1949) 34 Cal.2d 559, 562 [212 P.2d 878].)"[10] Moreover, an appeal from a justice court judgment is particularly inadequate to guarantee a fair trial since justice courts are not courts of record (Cal. Const., art. VI, § 1), and thus no transcript is ordinarily made of the original proceeding. If there is no transcript an appeal would be based solely upon a statement of the case settled or prepared by the non-attorney judge himself.

The United States Supreme Court has recognized that the complexities involved in defending oneself in a criminal trial are beyond the capabilities of the average layman untrained in the laws (*Gideon* v. *Wainwright,* 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]).[11] Furthermore, defendant's fundamental right to the assistance of counsel is guaranteed to him regardless of the severity of the punishment he faces if convicted. (Cal. Const., art. I, § 13; see *Argersinger* v. *Hamlin, supra,* 407 U.S. 25; *In re Smiley,* 66 Cal.2d 606 [58 Cal.Rptr. 579, 427 P.2d 179]; *In re Johnson, supra,* 62 Cal.2d 325.) Since our legal system regards denial of counsel as a denial of fundamental fairness, it logically follows that the failure to provide a judge qualified to comprehend and utilize counsel's legal arguments likewise must be considered a denial of due process.[12]

---

[10]The Supreme Court expressed a similar belief in *Ward* v. *Village of Monroeville, supra,* 409 U.S. 57, 61-62 [34 L.Ed.2d 267, 271-272], where it stated, "Nor, in any event, may the State's trial court procedure be deemed constitutionally acceptable simply because the State eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached judge in the first instance."

[11]In holding in *Gideon* that "The right of one charged with crime to counsel may not be deemed fundamental and essential to fair trials in some countries, but it is in ours," (372 U.S. at p. 344 [9 L.Ed.2d at p. 805]), the court quoted with approval from *Powell* v. *Alabama,* 287 U.S. 45, 68-69 [77 L.Ed. 158, 170-171, 53 S.Ct. 55, 84 A.L.R. 527], wherein Mr. Justice Sutherland wrote, "The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. *Even the intelligent and educated layman has small and sometimes no skill in the science of law.* If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence." (Italics added.)

These words take on even greater significance when we note that recently the Supreme Court stated, "Both *Powell* and *Gideon* involved felonies. But their rationale has relevance to any criminal trial, where an accused is deprived of his liberty." (*Argersinger* v. *Hamlin, supra,* 407 U.S. 25, 32 [32 L.Ed.2d 530, 536].)

[12]The reports commissioned by the Judicial Council (see fn. 8, *ante*), reached a similar conclusion, "It is incongruous today for prosecutors and defense attorneys,

The People point out that the courts of several states have concluded that the use of non-attorney judges is consistent with the demands of due process. (See *Ditty* v. *Hampton* (Ky. 1972) 490 S.W.2d 772 (app. dism. 414 U.S. 885 [38 L.Ed.2d 133, 94 S.Ct. 219]); *Crouch* v. *Justice of Peace Court of Sixth Precinct* (1968) 7 Ariz.App. 460 [440 P.2d 1000]; cf. *City of Decatur* v. *Kushmer* (1969) 43 Ill.2d 334 [253 N.E.2d 425, 428] [magistrate not an attorney].) Yet none of these cases convincingly resolved the inherent inconsistency in guaranteeing a defendant an attorney to represent him without providing an attorney judge to preside at the proceedings. As we have seen, a defendant's right to a fair trial may be substantially abridged by the use of a non-attorney judge.

We acknowledge that the justice court system in California has operated with remarkable efficiency under the general supervision of the Judicial Council. "California was, of course, one of the first states, through its qualifying examination, institutes [conferences and panel discussions among judges], and *California Justice Court Manual,* to lead the way toward better qualified lay judges." (Hennessy, *supra,* 3 Pacific L.J. at p. 470.) Moreover, we recognize the valuable contribution which non-attorney judges have made. "The great majority of the lay justice court judges now serving in California have demonstrated that nonlawyers who are interested, competent and dedicated to the work of the courts can perform an important role in the efficient administration of justice." (*Id.,* p. 474.) Yet, as we have explained, so long as a reasonable likelihood exists that a non-attorney judge will be unable to afford a defendant a fair trial, due process requires that the system be further refined.

It has been suggested that our holding could cause serious practical problems in view of the asserted scarcity of attorney judges in certain rural areas throughout this state. We recognize that there will be problems and have sought to minimize them to the extent constitutionally possible. We do not abolish the existing system permitting the use of non-attorney judges in all matters within the justice court jurisdiction. Such judges may continue to function in civil cases, and in criminal cases not involving potential jail sentences. Moreover, even in criminal cases where a jail sentence may be imposed, the non-attorney judge may act so long as defendant or his counsel waives the due process right to ·have the proceedings presided over by an attorney judge. Such right may be volun-

who must be licensed attorneys, to perform advocacy roles before a judge who does not have a similar background. The [non-attorney] judge is placed in a position of either drawing upon his own experience (which may be limited) or relying upon the position taken by the prosecutor or defense attorney." (Unified Trial Court Feasibility Study, p. 28.)

tarily relinquished just as the right to counsel may be relinquished. In the event defendant or his counsel fails to so stipulate and no attorney judges are available in the district, then either the cause could be transferred to another judicial district in the same county (see Pen. Code, § 1035), or the Judicial Council could assign an attorney judge from another area to hear the matter (see Cal. Const., art. VI, § 6).

The principle we announce today is not a novel one. It dates back at least to 1215 and the Magna Carta (§ 45) where it was written, "We will not make men justices, constables, sheriffs, or bailiffs, unless they are such as know the law of the realm, and are minded to observe it rightly." We conclude that, under today's advanced standards, due process demands that henceforth[13] a defendant charged with an offense carrying a possible jail sentence must be provided with an attorney judge to preside over the proceedings, unless he elects to waive such right.

The judgment is reversed.

McComb, J., Tobriner, J., Clark, J., Draper, J.,* Molinari, J.,* and Caldecott, J.,* concurred.

The petition of the real party in interest and respondent for a rehearing was denied September 26, 1974, and the opinion was modified to read as printed above. Draper, J.,* Molinari, J.,* and Caldecott, J.,* sat in place of Wright, C. J., Mosk, J., and Sullivan, J., who deemed themselves disqualified.

---

[13]In view of the widespread reliance upon the validity of the justice court system and the administrative problems in providing attorney judges for criminal trials, our ruling herein shall apply only to those criminal trials commencing on or after February 1, 1975.

*Assigned by the Chairman of the Judicial Council.