[Crim. No. 21664. May 4, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ALBERTO BARBOZA et al., Defendants and Appellants.

376

**COUNSEL**

Bruce S. Wiener, under appointment by the Supreme Court, Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, and Tom Lundy, Deputy State Public Defender, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Gregory W. Baugher, Vincent J. Scally, Robert D. Marshall and James Ching, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHARDSON, J.**—We examine the legal effects of a contract between the County of Madera and a public defender which provides financial disincentives for the defender to ascertain conflicts of interest which may arise when counsel represents multiple defendants being tried together on criminal charges. We will conclude that because of conflicts arising from the contract itself, the defendants' convictions must be reversed.

Defendant brothers, Rodolfo and Alberto Barboza, were charged in an information filed in the Superior Court of Madera County with assault with a deadly weapon or force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a).) On March 23, 1978, defendants appeared for arraignment and the case was continued to the following day for the appointment of counsel and an interpreter. Although the record does not reflect the formal appointment of counsel, defendants, jointly represented by an attorney from the office of the Public Defend-

er of Madera County, were thereupon arraigned and pleaded not guilty to the charge. After a jury trial, each defendant was convicted as charged and sentenced to the middle term for the offense.

We need not recite the underlying facts other than to note generally that the conflicting evidence at trial related to a physical attack on the victim outside a Madera bar during the evening of February 14, 1978. Rodolfo's contention that there was insufficient evidence to support the verdict is clearly unmeritorious.

Defendants contend that they were deprived of the effective assistance of counsel, asserting first, that the contract between the County of Madera and the public defender impermissibly provides financial disincentives for the public defender to find and declare conflicts of interest between defendants, and second, that the record demonstrates an actual conflict of interest arising from single representation of both defendants.

■ Joint representation of multiple defendants by either appointed or retained counsel is not impermissible. (*Cuyler* v. *Sullivan* (1980) 446 U.S. 335, 348 [64 L.Ed.2d 333, 346, 100 S.Ct. 1708, 1718]; *People* v. *Cook* (1975) 13 Cal.3d 663, 672 [119 Cal.Rptr. 500, 532 P.2d 148]; *People* v. *Chacon* (1968) 69 Cal.2d 765, 773-774 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].) To assure that conflict-free representation has occurred, courts have generally relied on the ethical obligations of counsel representing joint defendants and the informed choice of defendants themselves as to whether to accept joint representation. (*Cuyler, supra*, 446 U.S. at p. 346-347 [64 L.Ed.2d at pp. 345-346, 100 S.Ct. at p. 1717]; *People* v. *Cook, supra*, 13 Cal.3d at p. 672.) In this case, however, the terms of the contract itself do not permit the usual judicial reliance on the attorney's ethical responsibilities to protect the interests both of the criminal defendants and the judicial system.

■ Under the agreement, in effect from September 1, 1976, through August 31, 1979, the Madera County Public Defender's office was paid $104,000 per year. From this amount, $15,000 was deducted and deposited in a reserve account which was required to be maintained at all times to pay other defense counsel who were appointed when the public defender was disqualified because of a conflict of interest. The balance of the defender's compensation was payable in monthly installments of $7,416.66. The amount of any deficiency in the reserve account was subtracted from the monthly payment and deposited in the account. At

the end of each fiscal year, any unexpended balance in the reserve account was paid to the public defender, and conversely, the public defender was liable for any deficiency in the account.

Pursuant to the contract, the fewer outside attorneys that were engaged, the more money was available for the operation of the public defender's office. The direct consequence of this arrangement was a financial disincentive for the public defender either to investigate or declare the existence of actual or potential conflicts of interest requiring the employment of other counsel.

Unlike the typical conflict which may arise when single counsel represents multiple defendants, the initial conflict here arose the moment that the public defender was appointed to represent the two defendants. He was immediately confronted with competing considerations—discovery of any conflicts between his client defendants versus protection of his financial self-interest. Moreover, the situation differs from that in which multiple defendants jointly *retain* single counsel. There, the financial self-interest of the private attorney would be more readily apparent to the prospective clients. Their solvency also may well afford them a freedom of choice not present in the case of indigent defendants who seek appointment of counsel and who may be unaware not only of the existence and effect of conflicts but also of their ability to request separate representation.

We do not suggest that the public defender here in any way knowingly concealed, either from the court or from his clients, the possibility of conflicts arising from his joint representation. Nonetheless, we reaffirm the principle expressed by us over 50 years ago in connection with an attorney's obligation of fidelity to his client. In *Anderson* v. *Eaton* (1930) 211 Cal. 113, 116 [293 P. 788], we described the necessity for the avoidance of "any relation which would prevent him from devoting his entire energies to his client's interests," and judicial concern "as well to preclude the honest practitioner from putting himself in a position where he may be required to choose between conflicting duties, or be led to an attempt to reconcile conflicting interests, rather than to enforce to their full extent the rights of the interest which he should alone represent."

Much more recently, in *People* v. *Rhodes* (1974) 12 Cal.3d 180 [115 Cal.Rptr. 235, 524 P.2d 363], we considered the propriety of permitting a city attorney with prosecutorial responsibilities to represent indigent

criminal defendants. Holding that such representation was improper, we stressed that "It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the *appearance* of impropriety." (*Id.*, at p. 185, italics in original; *People* v. *Municipal Court (Wolfe)* (1977) 69 Cal.App.3d 714, 720 [138 Cal.Rptr. 235].)

The contract here expressly places the public defender in a situation in which, potentially, his financial interests—both personal and professional—oppose the interests of certain of his client-defendants. He, personally, will be liable for any deficiency existing in the reserve account at the end of each contract year. Professionally, he must deduct from his office budget those sums necessary to return the account to its required balance once payments to private appointed attorneys have been made. Also, he must consider the needs and interests of other defendants that his office will represent and the effect upon them as a result of the decrease in operating funds available to his office.

We find significance in a recent holding of the United States Supreme Court, *Marshall* v. *Jerrico, Inc.* (1980) 446 U.S. 238 [64 L.Ed.2d 182, 100 S.Ct. 1610], in a somewhat parallel situation. There the high court held that it was not improper for an assistant regional administrator of the Department of Labor to determine violations of the Fair Labor Standards Act and to assess fines against violators, despite the fact that such penalties are paid to the Employment Standards Administration within the same department. The court stressed that no governmental official actually profited from the assessment of fines, emphasizing that "It is plain that no official's salary is affected by the levels of the penalties." (446 U.S. at p. 245 [64 L.Ed.2d at p. 190, 100 S.Ct. at p. 1615].) The court concluded that the potential for bias flowing from conflicting interests of the regional administrator was too remote to affect his quasi-prosecutorial function. The danger of prejudice in the matter before us is not so tenuous. Here the public defender's income and office budget are *directly* affected by his determination of whether or not a conflict of interest exists between multiple defendants jointly represented. (Cf., *Wood* v. *Georgia* (1981) 450 U.S. 261 [67 L.Ed.2d 220, 101 S.Ct. 1097] [strategic decisions of counsel may have been affected by interests of third party who paid his fee].)

No matter how well-intentioned the public defender might be, the contract places him in a situation with grave consequences and implications for the administration of justice. Not only is there an "appearance of impropriety," there is also a real and insoluble tension, created by the contract, between the defender's conflicting interests.

We therefore hold, as a "judicially declared rule of criminal procedure" (*People* v. *Rhodes, supra,* 12 Cal.3d at p. 186; *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513]), that contracts of the type herein presented contain inherent and irreconcilable conflicts of interest. It follows that defendants here are entitled to separate and independent counsel on retrial.

In view of the probable reliance upon the validity of the contract prior to the filing of this opinion, the rule we announce herein will not affect cases tried prior thereto where neither a prior objection as to the propriety of the contract nor a showing of actual prejudice has been made. (See *Gordon* v. *Justice Court* (1974) 12 Cal.3d 323, 344, fn. 13 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551]; *People* v. *Germany* (1974) 42 Cal.App.3d 414, 422 [116 Cal.Rptr. 841].)

Because of our conclusion we need not reach the further question whether, under the circumstances herein presented, such actual conflicts of interest between these defendants existed as would require reversal even in the absence of the contract in question.

The judgments are reversed, and the cause is remanded to the superior court for further proceedings consistent with the views expressed herein.

Tobriner, J., Mosk, J., Newman, J., Grodin, J.,* and Reynoso, J.,* concurred.

BIRD, C. J.—I concur in the result reached by the majority, but I would reverse the judgment because the contract between Madera County and the public defender created so fundamental a conflict of interest as to deprive all defendants jointly represented by that office of the right to counsel under article I, section 15 of the California Constitution.

---

*Assigned by the Chairperson of the Judicial Council.

Since the public defender's compensation would have been directly reduced by the cost of employing private counsel when a conflict arose among codefendants, he had a direct interest in avoiding this financial penalty. As a result, the public defender could not be expected to investigate possible conflicts of interest or to give codefendants unbiased advice concerning their right to separate counsel when a conflict was evident. The public defender's financial interests conflicted with his clients' right to counsel.