194 Cal.App.3d 337 (1987)
239 Cal. Rptr. 413
THE PEOPLE, Plaintiff and Respondent,
v.
DWAYNE ANTHONY KNIGHT et al., Defendants and Appellants. In re DWAYNE ANTHONY KNIGHT on Habeas Corpus.
Docket Nos. B021763, B024323.
Court of Appeals of California, Second District, Division Six.
August 21, 1987.
*341 COUNSEL
W. Dean Freeman and Thomas Edward Wall, under appointments by the Court of Appeal, for Defendants and Appellants.
John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Donald E. de Nicola and Frank M. Horowitz, Deputy Attorneys General, for Plaintiff and Respondent.
OPINION
STONE, P.J.
Appellants Knight and Washington appeal from judgments of conviction of one count of oral copulation in concert (Pen. Code, § 288a, subd. (d)).[1] They contend the trial court erred in denying their motions to withdraw pleas of guilty (§ 1018). Knight also filed a petition for habeas corpus, which this court ordered to be considered concurrently with this appeal, alleging the same issues.
We find that appellants have failed to demonstrate the trial court abused its discretion in denying their motions, and affirm the judgment.

FACTS
October 25, 1985, appellants were housed at El Paso De Robles School, a Youth Authority facility. At approximately 3 p.m., Mark H. was painting alone near the laundry room when appellants entered. They lived in San Simeon Cottage with Mark and approximately 50 others and although he did not know them by name, he knew them by sight.
Washington approached Mark and told him to orally copulate Knight. When Mark refused, Washington struck him in the eye. Mark continued to refuse, and both appellants struck him. Knight threatened to kill him. Both appellants attempted to choke Mark with rolled towels, stopping only when he finally acquiesced to their demands. He orally copulated each appellant while the other held his head.
Mark did not report the incident immediately but when he sat in the dining hall unable to eat, his face bruised and swollen, he was taken to the hospital. He suffered a broken jaw, bruises, a broken nasal cartilage, discoloration and swelling of the left temporal region of the face, hematoma of the *342 left ear, pain and swelling in the neck, pain and redness in the kidney area and a four-inch wide traumatic hemorrhage around his neck. He described appellants (they were two of only five inmates who wore hairnets), identified them in person, and also identified them at the preliminary hearing.
Appellants entered pleas of not guilty to two counts of oral copulation in concert (§ 288a, subd. (d)) with great bodily injury (§ 12022.7) and one count of assault with a deadly weapon with great bodily injury. They changed their pleas to guilty of one count of oral copulation in concert, the other allegations to be dismissed. According to the felony disposition agreement, each appellant would be sentenced to the seven-year midterm and referred to Youth Authority (YA) for evaluation. (Welf. & Inst. Code, § 1731.5, subd. (c).) The trial court informed both appellants at the time they changed their plea that, due to the assaultive nature of the offense, it was unlikely YA would accept them. When the trial court advised them of their rights and obtained waivers, both appellants said they had had sufficient time to discuss the case with their attorneys.
At time set for sentencing, the probation report indicated that a consultant for YA opined that YA would reject them due to the assault on a ward within the institution. Both appellants moved to withdraw their pleas of guilty. The court appointed different counsel for purposes of the hearing on their motions.
At the hearing, Washington testified that his attorney, Phillips, who served as a "conflicts" public defender under a contract with the county, told him he did not believe Washington would prevail at trial, although Phillips indicated Washington could go to trial, and that Washington, if convicted, would receive a 22-year prison sentence. Based upon this conversation, he said he changed his plea.
Phillips testified that he spent approximately 60 percent of his time on indigent defense under the conflicts contract and the remainder in private practice. He received $2,500 per month from the county and was never aware of an instance in which the dollar amount he was to receive for his representation of an indigent criminal defendant influenced his judgment. He felt the disposition was fair based upon his evaluation of the victim's testimony at the preliminary hearing, the victim's identification of Washington, his own research and discussions with cocounsel. Washington had agreed to the plea bargain and was not pressured into accepting it. Phillips was prepared to proceed to trial if his client so decided.
Knight's preplea attorney, Adams, subcontracted with the primary public defender under contract with the county. He received a monthly stipend *343 of $2,300 and also engaged in private practice, as allowed by the contract. Knight testified that Adams told him he would lose at trial, that he had only a 20 percent chance of winning, and would be exposed to 21 or 22 years in prison if he lost. Adams also told him he had been unable to interview witnesses whose names Knight had given him. Knight said he did not want to spend 20 years in prison and since he had no witnesses for trial, he changed his plea. He also said he changed his mind after he read the probation report.
Adams testified that indigent defense under his contract constituted approximately 50 percent of his practice and acknowledged that he would have more time for private work if he spent less time on indigent defense. The cases under contract are divided among three attorneys and there is no limitation in the number of cases the public defender's office may be required to handle. He feels an ethical responsibility to all clients and money does not affect his case preparation. He told Knight that he was unable to interview the witnesses named by Knight but would request a continuance to do so if Knight wished to go to trial. Adams was satisfied the district attorney's offer was fair and did not pressure Knight. If Knight had not agreed, he would have requested a continuance to prepare for trial.
Both counsel representing appellants at the hearing conceded there were no allegations of intentional wrongdoing or unethical conduct on the part of either Adams or Phillips. They contended instead that since the contracts in question allowed these attorneys to engage in private practice, and the attorneys were paid the same amount whether or not they went to trial, there was an inherent conflict of interest which prejudiced their client's right to competent and conflict-free representation.
The trial court denied the motions and sentenced each appellant to seven years in prison, with a referral to YA pursuant to Welfare and Institutions Code section 1731.5, subdivision (c). YA ultimately refused to accept them under that section.
Washington contends that the system of indigent defense pursuant to the written contract between the attorney and county contains an inherent conflict of interest for the attorney concerning whether to try a case because the attorney receives the same amount of compensation for either alternative, trial or plea.
Knight argues, both on appeal and in his habeas corpus petition, that he received inadequate assistance of counsel due to Adams's failure to investigate his defense and interview witnesses and failure of the attorney appointed to represent him at the hearing to raise the issue that there was inadequate *344 overall funding under the contract. He also contends that various provisions of the contract provide a conflict according to State Bar voluntary guidelines for contract defense services.

DISCUSSION

1. No Incompetence of Counsel Shown.

 A. Motion to Withdraw Plea.

(1) A guilty plea may be withdrawn any time before judgment for good cause shown. (§ 1018; People v. Waters (1975) 52 Cal. App.3d 323, 328 [125 Cal. Rptr. 46]; People v. Hunt (1985) 174 Cal. App.3d 95, 102 [219 Cal. Rptr. 731].) Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea, but good cause must be shown by clear and convincing evidence. (People v. Hunt, supra, 174 Cal. App.3d 95, 103; People v. Cruz (1974) 12 Cal.3d 562, 566 [116 Cal. Rptr. 242, 526 P.2d 250].)
(2) Grant or denial of a motion lies within the trial court's sound discretion after consideration of all factors necessary to effectuate a just result, and a reviewing court will not disturb the trial court's decision unless abuse of discretion is clearly shown. (Hunt, supra, 174 Cal. App.3d at p. 103; People v. Superior Court (Giron) (1974) 11 Cal.3d 793, 796 [114 Cal. Rptr. 596, 523 P.2d 636].) (3) We distinguish "involuntary" from "unwilling" acceptance of counsel's advice; it is "involuntary" if done without choice or against one's will, unwillingly done if through only reluctance. (People v. Hunt, supra, at p. 103.)
(4) The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his decision. (Brady v. United States (1970) 397 U.S. 742, 756-757 [25 L.Ed.2d 747, 760-761, 90 S.Ct. 1463].) Postplea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. (People v. Hunt, supra, 174 Cal. App.3d 95, 104.) (5) Moreover, where two conflicting inferences may be drawn from the evidence, it is the reviewing court's duty to adopt the one supporting the challenged order. (Ibid.) Neither can the reviewing court reverse the trial court if there is substantial evidence or reasonable inferences to be drawn from it which support the order. (People v. Harvey (1984) 151 Cal. App.3d 660, 667 [198 Cal. Rptr. 858].)

*345 B. Failure to Investigate (Knight).

(6a) The record on appeal does not disclose a basis for contending counsel failed to investigate either facts or law in the manner required of a reasonably competent diligent attorney. (See People v. Jackson (1980) 28 Cal.3d 264, 288 [168 Cal. Rptr. 603, 618 P.2d 149], disapproved on other grounds in People v. Louis (1986) 42 Cal.3d 969 [232 Cal. Rptr. 110, 728 P.2d 180].) According to Knight, Adams was unable to interview witnesses because either they had been moved to other institutions or he encountered difficulty in arranging interviews in the institutions where they were housed. However, he was willing to do so before going to trial. Moreover, he had assessed the strength of the prosecution's evidence, especially the victim's identification of the appellants. Knight does not inform us what defense Adams was supposed to investigate and the only possibilities that come to mind are misidentification, alibi, or consent. Adams was in a position to evaluate those defenses.
Since counsel stated his reasons why he thought the plea well founded, Knight's speculative assertions cannot form the basis of finding his counsel incompetent for lack of investigation. (People v. Jackson, supra, 28 Cal.3d 264, 288-289.) (7) Moreover, choice of which, and how many, potential witnesses to interview or call to trial is precisely the type of choice which should not be subject to review by an appellate court. (People v. Floyd (1970) 1 Cal.3d 594, 709 [83 Cal. Rptr. 608, 464 P.2d 64], disapproved on other grounds in People v. Wheeler (1978) 22 Cal.3d 258, 287 [148 Cal. Rptr. 890, 583 P.2d 748].) (6b) The California Supreme Court has never required counsel to investigate all prospective witnesses and cannot presume prejudice from the mere fact of counsel's alleged inaction. (People v. Jackson, supra, at p. 289.) There is no ignorance of facts or law shown, and no failure to recognize a defense that was crucial or even meritorious. (People v. Waters, supra, 52 Cal. App.3d 323, 331.) Since the record on appeal does not reveal sufficient facts to establish even a prima facie case under People v. Pope (1979) 23 Cal.3d 412 [152 Cal. Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1], we find Knight has not carried his burden on this issue.

C. Failure to Allege Inadequate Funding (Knight).

(8a) Knight also asserts that his counsel at the hearing was incompetent for failure to present the issue that there was inadequate funding under the contract, this argument based on the trial court's finding there was no showing of inadequate funding. Knight acknowledges there is no California authority in point but cites an Arizona case, State v. Smith (1984) 140 Ariz. 355 [681 P.2d 1374] which found contracts for indigent representation did not conform with standards set forth in a tentative draft proposed by the *346 National Legal Aid and Defender Association entitled "Guidelines for Negotiations and Awarding Indigent Defense Contracts."
Here, nothing in the record on appeal suggests the existence of evidence that San Luis Obispo County's financial commitment to indigent criminal defense is inadequate. (9) The burden of proving a claim of inadequate counsel is the defendant's who must establish that counsel failed to perform with reasonable competence, and that counsel's omissions cannot be explained on the basis of any knowledgeable choice of tactics. Defendant must establish that counsel's acts or omissions resulted in a withdrawal of a potentially meritorious defense. (People v. Pope, supra, 23 Cal.3d 412, 425: People v. Jackson, supra, 28 Cal.3d 264, 289; People v. Fosselman (1983) 33 Cal.3d 572, 584 [189 Cal. Rptr. 855, 659 P.2d 1144].)
(8b) Knight attempts to turn a negative finding into a positive assertion: because the court said there was no evidence of inadequate funding, there must have been evidence which counsel neglected to put before the court. However, Knight fails to allege on appeal that such data exists. (10) Inadequacy of counsel is not established by counsel's failure to raise a defense which has no substantive merit. (People v. Waters, supra, 52 Cal. App.3d 323, 330.) Nor is counsel required to make futile motions or indulge in idle acts to appear competent. (See In re Lower (1979) 100 Cal. App.3d 144, 149 [161 Cal. Rptr. 24]; People v. Zikorus (1983) 150 Cal. App.3d 324, 335 [197 Cal. Rptr. 509].) (8c) Again, appellant fails to sustain his burden of proving inadequate counsel.

2. No Financial Conflict Shown.

(11) Both appellants contend the contract contains an inherent conflict of interest because, since there is no allowance for additional remuneration if the case goes to trial and since it permits attorneys to engage in private practice, there is a financial disincentive to go to trial. They cite People v. Rhodes (1974) 12 Cal.3d 180 [115 Cal. Rptr. 235, 524 P.2d 363], Maxwell v. Superior Court (1982) 30 Cal.3d 606 [180 Cal. Rptr. 177, 639 P.2d 248, 18 A.L.R.4th 333], People v. Jackson (1985) 167 Cal. App.3d 829 [213 Cal. Rptr. 521], People v. Mroczko (1983) 35 Cal.3d 86 [197 Cal. Rptr. 52, 672 P.2d 835], and People v. Barboza (1981) 29 Cal.3d 375 [173 Cal. Rptr. 458, 627 P.2d 188] for support.
Those cases are all distinguishable. In Rhodes, the Supreme Court found a conflict not necessitating a showing of actual prejudice because defendant was represented by the city attorney who prosecuted municipal code violations and might be reluctant to engage in exhaustive or abrasive cross-examination of police officers whom he would call as his own witnesses in other *347 cases he prosecuted. In Maxwell, the trial court had disqualified trial counsel because he contracted with defendant for his life story. The Supreme Court found that although such contract does present a threat that counsel might provide deficient representation, in that particular case defendant made a voluntary and knowledgeable waiver on the record.
In Jackson, failure of the defense counsel to disclose a "dating relationship" with the prosecuting attorney required reversal, and in People v. Mroczko, the Supreme Court found both a potential and actual conflict where defendant's counsel represented both his codefendant and a witness who had also been a suspect in the crime.
In Maxwell v. Superior Court, supra, 30 Cal.3d 606, the Supreme Court held that when a conviction is attacked on the ground that an appointed lawyer was influenced by a conflict of interest, the appellate court may not "`indulge in nice calculations as to the amount of [resulting] prejudice ...'" and the conviction must be reversed if the record supports "informed speculation" that the conflict was prejudicial. (Id. at pp. 612-613; see also People v. Mroczko, supra, 35 Cal.3d 86, 104-105.) In People v. Barboza, supra, the court found "inherent and irreconcilable conflicts" in a budgeting scheme that discouraged the public defender from urging his own disqualification in multiple representation cases since funds for appointment of conflicts counsel were either charged to his budget if the county's allocation for that purpose was insufficient, or he would obtain a rebate of the surplus in that fund at the end of the year. (29 Cal.3d 375, 381.) Appellants attempt to analogize Barboza to their cases.
Here, it was conceded there was no actual prejudice and no allegation of wrongdoing or unethical conduct. The only question is whether there is a potential financial conflict which supports an "informed speculation" that appellants' right to effective representation was prejudicially affected. Knight additionally alleges that certain provisions of the contract, i.e., indemnification of the county and limit on the amount of investigators' fees, make the contract vulnerable under the reasoning of State v. Smith, supra, 140 Ariz. 355, and under voluntary guidelines adopted by the State Bar. He contends that failure to investigate, a prime factor in his decision to plead guilty, is tied to financial disincentive to pay investigators' fees.
Here, we would not be indulging in the "informed speculation" discussed in Maxwell, but sheer conjecture. There is no evidence in the record or even hinted at in the briefs of petition for habeas corpus that indicate that the provisions for indemnity and funds for investigators were even relevant to appellants' cases. There was no showing that any alleged failure to investigate was linked in any way to lack of funds to obtain an investigator. *348 Moreover, the trial court specifically found, and the record supports, that the funds for services of an investigator were not tied to the attorneys' compensation.
Nor do we hold that simply because the attorneys contracting to represent indigent criminal defendants could also engage in private practice does it follow that they will neglect their indigent clients in favor of private clients. There was no evidence that the attorneys received more for their private work than they did for their contract work. Thus, based on the evidence presented, we are not prepared to hold such a contractual provision presents a potential conflict that leads to "informed speculation" of actual prejudice. (12) Moreover, an attorney's duty runs to the client, not to the attorney's pocket. (Phillips v. Seely (1974) 43 Cal. App.3d 104, 117 [117 Cal. Rptr. 863]; People v. McKenzie (1983) 34 Cal.3d 616, 631 [194 Cal. Rptr. 462, 668 P.2d 769].)
As quoted by the Supreme Court in Maxwell v. Superior Court, "`[A]lmost any fee arrangement between attorney and client may give rise to a "conflict." An attorney who received a flat fee in advance would have a "conflicting interest" to dispose of the case as quickly as possible, to the client's disadvantage; and an attorney employed at a daily or hourly rate would have a "conflicting interest" to drag the case on beyond the point of maximum benefit to the client. [¶] The contingent fee contract so common in civil litigation creates a "conflict" when either the attorney or the client needs a quick settlement while the other's interest would be better served by pressing on in the hope of a greater recovery. The variants of this kind of "conflict" are infinite....'" (30 Cal.3d 606, 618-619, fn. 8.)
(13) In absence of any contrary factual showing we must accept the trial court's findings and affirm the trial court's orders. (Denham v. Superior Court (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr 65, 468 P.2d 193].)
The judgments are affirmed.
Gilbert, J., and Abbe, J., concurred.
Appellants' petitions for review by the Supreme Court were denied December 17, 1987.
NOTES
[1] All statutory references hereinafter are to the Penal Code unless otherwise specified.