[No. A034738. First Dist., Div. Three. Aug. 29, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
ARTIS SANDERS, JR., Defendant and Appellant.

**COUNSEL**

Carol Strickman, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MERRILL, J.**—Artis Sanders, Jr., appeals from a judgment of conviction, following jury trial, of one count of possession of marijuana for sale. (Health & Saf. Code, § 11359.) We reverse the judgment herein for the reason that the admission of the testimony of an individual sworn as a juror in the case, but excused prior to testifying, impermissibly violated Sanders's constitu-

tional right to trial by an impartial jury as guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution.

## I

On March 29, 1984, at approximately 11 a.m., Oakland Police Officer Forrest Thornberry, while driving a marked police car, observed Sanders in a vacant lot. Sanders was standing in front of a three- to four-foot cement wall, with his back to the officer. As the officer turned the corner, Sanders looked over his shoulder and saw the officer. The officer then observed Sanders lift up an orange cushion which was on the wall, place his hand underneath the cushion, put the cushion down and walk away.

Officer Thornberry pulled over and asked Sanders for some identification. He then asked Sanders what he had placed under the cushion and Sanders replied that it was a book of matches. The officer lifted the cushion and saw an eight-inch-deep hole in the cement, filled with twelve baggies of green vegetable matter which appeared to be marijuana. Sanders was placed under arrest. Two hundred sixty-eight dollars in $10, $5, and $1 bills were found on his person. The officer did not observe a book of matches under the orange cushion or on Sanders's person.

Officer Thornberry also testified that for the two weeks prior to Sanders's arrest, he had observed him each day talking to individuals in double-parked cars or to passers-by on the sidewalk.

A criminalist testified that the 12 baggies each contained approximately 1.5 grams of marijuana.

Oakland Police Officer Everet Gremminger, with 12 years of experience in the vice detail, testified as an expert concerning the packaging of marijuana as it relates to the intent to sell. He testified that the neighborhood where Sanders was arrested was known for its high rate of marijuana sales. Officer Gremminger described a common "street sale" transaction; the seller, with only one or two baggies on his person, stands on a street corner and flags down cars to make sales. The remainder of the seller's supply is typically kept in a "stash location."

Officer Gremminger examined the bags seized from the cement hole and testified that they were "dime," or $10 bags. It was the officer's opinion that someone with twelve $10 baggies and $268 cash on his person had the intent to sell marijuana. He also testified that if he had observed someone approaching passers-by and stopping vehicles at this location daily for two

weeks, he would suspect that the individual was involved in the sale of marijuana or narcotics.

Finally, the prosecution presented evidence that Sanders sold marijuana subsequent to the time of the charged offense. However, the testimony was received from Anthony Melanche, a sworn juror in this case who was excused for cause after he revealed to the court that he recognized Sanders as someone who had sold marijuana to his brother in the summer of 1984. Notwithstanding the defense objection that the presentation of Melanche's testimony constituted a due process violation, the court admitted his testimony. Melanche told the jury that on two occasions in June or July 1984 he had observed Sanders sell marijuana to his brother.

## II

The Sixth Amendment to the United States Constitution mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . ." The right to jury trial in criminal cases, guaranteed in state proceedings by force of the Fourteenth Amendment (*Duncan* v. *Louisiana* (1968) 391 U.S. 145, 149 [20 L.Ed.2d 491, 496, 88 S.Ct. 1444], rehg. den. 392 U.S. 947 [20 L.Ed.2d 1412, 88 S.Ct. 2270]), encompasses the right to trial by an impartial jury. (U.S. Const., Amend. VI.) ■ A basic requirement of due process is that a defendant be accorded a fair trial in a fair tribunal. (*Turner* v. *Louisiana* (1965) 379 U.S. 466, 472-473 [13 L.Ed.2d 424, 429, 85 S.Ct. 546]; *In re Murchison* (1955) 349 U.S. 133, 136 [99 L.Ed. 942, 946, 75 S.Ct. 623].)

■ The Sixth Amendment encompasses additional guarantees implicit in the nature of trial by an impartial jury; namely that the jury's verdict be based upon the evidence adduced at trial, uninfluenced by extrajudicial evidence or communications or by improper association with the witnesses, parties, counsel or other persons. (*Turner* v. *Louisiana, supra,* 379 U.S. at pp. 472-473 [13 L.Ed.2d at p. 429]; *People* v. *Tidwell* (1970) 3 Cal.3d 62, 74 [89 Cal.Rptr. 44, 473 P.2d 748].) "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel." *(Turner* v. *Louisiana, supra,* 379 U.S. at pp. 472-473 [13 L.Ed.2d at p. 429].)

*Turner* involved a jury trial in which the prosecution's leading witnesses were the same two deputy sheriffs who watched over the jury during the three-day period it was sequestered for trial. The United States Supreme

Court held that the witnesses' close and continuous association with the jurors deprived Turner of his constitutional right to trial by an impartial jury as guaranteed by the due process clause of the Fourteenth Amendment. Although the witnesses testified they had not discussed the case with the jurors, the court found their close relationship had a prejudicial impact on the credibility attached to the witnesses' testimony. (379 U.S. at pp. 472-473 [13 L.Ed.2d at p. 429].)

" 'In essence, the right to jury trial guaranties to the criminally accused a fair trial by a panel of impartial, "indifferent" jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process. [Citations.] "A fair trial in a fair tribunal is a basic requirement of due process." [Citation.] . . . [A juror's] verdict must be based upon the evidence developed at the trial. [Citation.] This is true, regardless of the heinousness of the crime charged, the apparent guilt of the offender or the station in life which he occupies. . . .' " (*Turner* v. *Louisiana, supra,* 379 U.S. at pp. 471-472 [13 L.Ed.2d at p. 428], citing *Irvin* v. *Dowd* (1961) 366 U.S. 717, 722 [6 L.Ed.2d 751, 755, 81 S.Ct. 1639].) The requirement that the jury's verdict be based upon evidence developed at trial pertains to the "fundamental integrity of all that is embraced in the constitutional concept of trial by jury." (*Turner, supra,* at p. 472 [13 L.Ed.2d at p. 429], fn. omitted; see also *People* v. *Gainer* (1977) 19 Cal.3d 835, 847-848 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73].)

The court commented that permitting an intimate association between the jurors and two key prosecution witnesses would have violated the basic guarantees of the defendant's constitutional right to an impartial jury even if the witnesses had not been deputy sheriffs. The fact that they were in the role of guardian, made the association even more prejudicial because "the relationship was one which could not but foster the jurors' confidence . . . ." (*Turner* v. *Louisiana, supra,* 379 U.S. at p. 474 [13 L.Ed.2d at p. 430], fn. omitted.)

It is well settled that the very character of certain procedures makes it impractical to determine the degree of prejudice to the defendant. A defendant attempting to establish that he has been deprived of due process of law during the course of his or her trial need not show actual prejudice in order to obtain relief; it is sufficient if the defendant demonstrates a "reasonable *probability* of prejudice." (*Gordon* v. *Justice Court* (1974) 12 Cal.3d 323, 329 [115 Cal.Rptr. 632, 525 P.2d 72, 71 A.L.R.3d 551], cert. den. *sub nom. California* v. *Gordon* (1975) 420 U.S. 938 [43 L.Ed.2d 415, 95 S.Ct. 1148], citing *Hamilton* v. *Alabama* (1961) 368 U.S. 52 [7 L.Ed.2d 114, 82 S.Ct. 157]; *Ward* v. *Village of Monroeville* (1972) 409 U.S. 57 [34 L.Ed.2d 267, 93 S.Ct. 80]; *Sheppard* v. *Maxwell* (1966) 384 U.S. 333 [16 L.Ed.2d

600, 86 S.Ct. 1507]; *Estes* v. *Texas* (1965) 381 U.S. 532 [14 L.Ed.2d 543, 85 S.Ct. 1628], rehg. den. 382 U.S. 875 [15 L.Ed.2d 118, 86 S.Ct. 18]; *Turner* v. *Louisiana, supra,* 379 U.S. 466; *In re Murchison, supra,* 349 U.S. 133; *Tumey* v. *Ohio* (1927) 273 U.S. 510 [71 L.Ed. 749, 47 S.Ct. 437, 50 A.L.R. 1243]; accord *People* v. *Sirhan* (1972) 7 Cal.3d 710, 731 [102 Cal.Rptr. 385, 497 P.2d 1121], cert. den. *sub nom. Sirhan* v. *California* (1973) 410 U.S. 947 [35 L.Ed.2d 613, 93 S.Ct. 1382], overruled on another point in *Hawkins* v. *Superior Court* (1978) 22 Cal.3d 584, 593, fn. 7 [150 Cal.Rptr. 435, 586 P.2d 916]; *People* v. *Turner* (1983) 145 Cal.App.3d 658, 677 [193 Cal.Rptr. 614].)

■ Application of these principles to the record in the instant case compels the conclusion that Sanders was deprived of his due process right to a fair trial by an impartial jury. Contrary to the People's argument, Melanche had more than a "brief encounter" with the jury, spending at least two days with the other members of the jury panel. In addition, Melanche's fellow jurors had the opportunity to listen to his responses during voir dire, thereby gaining further familiarity with him. During this examination Melanche described his employment as a security officer at a nightclub and his observations of people smoking marijuana. He referred to his friendly relationship with police officers and their involvement in arrests made at the nightclub. After the jury and the alternates were sworn, Melanche came forward and informed the court, outside the presence of the other jurors, that he knew Sanders as someone who had sold marijuana to his brother and his friends during the summer of 1984.

Melanche enjoyed an intimate association with the jury panel during the two-day period of voir dire examination. The record does not reveal the amount of time spent by Melanche with the other jurors but the jurors conversed with one another in the halls of the courthouse prior to court sessions and at recesses. Also, it appears that Melanche was together with the other jurors in the jury assembly room prior to the day that the case was assigned for trial. Notwithstanding Melanche's testimony that he did not speak with any jurors about Sanders's subsequent marijuana sales, this case demonstrates a reasonable probability of prejudice from his testimony as a witness. The special relationship which may develop among members of a jury venire and especially members of the panel selected and sworn in a case may impermissibly permeate the jury's objectivity in the event a former juror is called as a witness. By virtue of the jury's familiarity and close association with Melanche, the jury may have attached greater credibility to his testimony. In essence, the jury's verdict in this case was not based solely on the evidence developed at trial but was prejudicially influenced by the jurors' close association with a witness in the trial. Under the facts of this

case it was prejudicial error for the trial court to have permitted the prosecution to call Melanche as a witness, after he was excused as a juror.

Inasmuch as we reverse on the basis of denial of due process of law, we need not reach the remaining contentions raised by Sanders's appeal.

The judgment is reversed.

White, P. J., and Barry-Deal, J., concurred.