Filed 11/17/14  P. v. Wilson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>JOHN KEITH WILSON,<br><br>　　Defendant and Appellant. | H040185<br>(Santa Clara County<br>Super. Ct. No. B1050331) |

## I.  INTRODUCTION

Defendant John Keith Wilson pleaded no contest to 21 counts of lewd conduct upon a child under 14 (Pen. Code, § 288, subd. (a)).[1]  Following a court trial, defendant was found guilty of one additional count of lewd conduct upon a child under 14.  After the court denied defendant's motion to withdraw his pleas, the court sentenced him to 50 years in prison.  On December 21, 2012, this court reversed the judgment and remanded the matter for further hearing on defendant's motion because the trial court did not clearly resolve the factual conflict of whether defendant's pleas were voluntary.  (*People v. Wilson* (Dec. 21, 2012, H037600) [nonpub. opn.] (*Wilson I*).)[2]

---

[1]  All further unspecified statutory references are to the Penal Code.

[2]  By order of December 6, 2013, we have taken judicial notice of the record on appeal in *Wilson I*, *supra,* No. H037600.

Following issuance of the remittitur, a different judge reviewed the record and held a further hearing, as the original judge had since retired. The court on remand denied the motion.

In this second appeal, defendant contends that the trial court on remand abused its discretion in denying the motion because the court did not follow the law of the case and substantial evidence does not support the court's determination. Defendant further contends that the denial of the motion violated his state and federal constitutional rights.

We determine that the denial of the motion on remand was not an abuse of discretion and that defendant's constitutional rights were not violated. Therefore, we will affirm the judgment.

## II. BACKGROUND

Defendant's daughter was 14 years old at the time of trial. Her mother and defendant had divorced when she was in the third grade. Thereafter, defendant's daughter sometimes stayed with defendant, and at times she slept in his bed. On one occasion, when she was 12 years old and in the sixth grade, defendant moved his hand back and forth on her vaginal area over her pajamas. The touching also occurred on other occasions.

Regarding defendant's other offenses,[3] the police department received a tip that defendant was sexually molesting a 13-year-old boy. The boy, whose mother had dated defendant, reported that defendant had masturbated him beginning approximately two years prior, and that it occurred multiple times. After the first amended complaint was filed in this case, the boy further reported that defendant had used dildos on him, showed him child pornography, orally copulated him, and placed defendant's penis in the boy's anus. While the police were investigating the allegations, the police discovered additional victims of defendant. A 13-year-old boy, whose father lived in the same

---

[3] This summary of defendant's other offenses is taken from the probation report.

2

apartment complex as defendant, reported that defendant had given him (the boy) a massage in or near his groin area and under his shorts. Another victim, defendant's "adopted step-son," reported that he was sexually abused by defendant for more than eight years, beginning at the age of 12 or 13. The stepson, who was an adult at the time of his report to the police, indicated that the abuse included fondling and oral copulation. Defendant also showed him child and adult pornography.

## A. *The Trial Court Proceedings Before the First Appeal*

### 1. The no contest pleas to most counts

Defendant was charged by first amended complaint filed February 14, 2011, with 13 counts of lewd conduct upon a child under 14 (§ 288, subd. (a); counts 1-13). It was further alleged as to counts 1 through 9 that the offenses were committed against more than one victim (§ 667.61, subds. (b) & (e)).

On July 14, 2011, the date set for the preliminary examination, the trial court indicated that there had been "substantial discussions" in the case that day. The following proposed disposition was set forth on the record. Ten counts of lewd conduct upon a child under 14 (§ 288, subd. (a); counts 14-23) would be added to the complaint. Defendant would plead no contest to counts 1 through 6, 8, and 10 through 23, with the understanding that count 9 would be dismissed, that all section 667.61 allegations would be dismissed, and that he would receive a determinate term of 48 years for the counts to which he pleaded no contest. Defendant would also waive his right to a jury trial on count 7 with the understanding that a court trial would be conducted regarding that count. The court subsequently granted the prosecution's motion to add ten counts.

The court asked defendant whether he was "satisfied" that he had "sufficient time to speak" with his counsel regarding the allegations in the case, the proof required of the prosecution at the preliminary examination and at trial, possible defenses and tactics, and the possible range of sentences. Defendant responded, "Yes, your Honor." The court

3

then asked defendant whether his decision to resolve the case that day was "a free and voluntary decision." Defendant again responded, "Yes, your Honor."

By answering the court's further questions with "No" twice and "Yes, sir" and "No, sir," defendant confirmed that he had not been threatened to enter a plea that day, that no one had made any promises to him about the outcome of the case other than as stated on the record, that he was a native English speaker and college graduate, and that he did not have trouble understanding the language or concepts used in court. When asked whether he had recently taken any medicine, drugs, or alcohol that adversely affected his ability to understand the proceedings, defendant responded, "No."

The court then explained to defendant the preliminary examination and trial rights he would be giving up by entering his plea. Defendant indicated that he understood and gave up those rights. The court also explained that a plea of no contest was the same as a plea of guilty. Regarding sentencing, the court stated that "all victims have a right to appear at sentencing and be heard to make a victim impact statement." The court further indicated that defendant would be sentenced to the agreed upon term of 48 years, unless something new was brought to the court's attention leading it to believe that the sentence was unconscionable. The court also explained the consequences of a no contest plea by defendant, including a lifetime ban on possession of firearms and ammunition, submission of samples for a DNA database, lifetime registration as a sex offender, being required to pay restitution, fines, and fees, and having prior convictions that qualified as strikes with respect to a future felony offense. The court eventually asked defendant whether he had any questions, and defendant responded, "No, sir, your honor."

Immediately thereafter, the trial court stated to defendant, "you're charged as previously stated in counts 1 through 23 and excepting count 9 which is taken under submission for dismissal at the time of sentencing and count 7 which will be set for court trial, how do you wish to plead to those enumerated charges?" Defendant responded, "No contest." The court then asked defendant whether he had had an opportunity to

4

review with counsel "the contents of the first amended complaint including the details regarding the time frames and alleged victims." Defendant responded, "Yes, your Honor." Thereafter, defense counsel indicated to the court that he was "satisfied" that defendant understood his rights and was "freely and voluntarily giving them up," that he was "satisfied" that defendant was "conversant with the particulars of the allegations" as to each count, and that no further voir dire was necessary. The prosecutor and defense counsel then stipulated to a factual basis for the pleas based on various "offense reports." The court then again asked defendant how he wished to plead to "all these counts except for Count 7 and 9," and defendant again stated, "No contest." The court found a factual basis and stated that "the plea is free, voluntary, knowing and intelligent."

On August 10, 2011, an information that included the 10 additional counts of lewd conduct upon a child under 14 (counts 14-23), and that reflected the removal of the section 667.61 allegations, was filed.

### 2. The court trial on one count

On August 19, 2011, a court trial was held regarding count 7. Defendant's 14-year-old daughter testified at trial. The court ultimately found defendant guilty on count 7 (lewd conduct upon a child under 14; § 288, subd. (a)).

### 3. The motion to withdraw pleas

In early September 2011, defendant filed a motion to withdraw his pleas.[4] The sole basis articulated in the motion was that defendant "was not in a right state of mind to understand the gravity of his decision" at the time he entered the pleas. Declarations by a therapist and defendant were submitted in support of the motion.

---

[4] The copy of the motion in the record is not file-stamped. At a September 7, 2011 hearing, the trial court indicated that the motion had been hand-delivered to the court that day, and faxed to the court the day prior. Defendant's declaration is dated September 7, 2011, and the proof of service for the motion indicates that it was personally delivered to the prosecutor on September 7, 2011.

5

The therapist, Donald A. Wilcox, stated in his declaration, dated September 6, 2011, that he was a licensed marriage and family therapist with a master's degree in educational psychology and a doctorate in education. He had worked "in this field for 23 years in a variety of settings," and his primary areas of expertise were substance dependence and attention deficit disorder. Dr. Wilcox had been employed by Santa Clara County since 1998, and he currently worked at Elmwood Correctional Facility for Adult Custody Mental Health on the "crisis team." As part of the crisis team, he saw inmates with a variety of mental health issues, including a "fair amount of inmates with acute stress reaction or shock." According to Dr. Wilcox, "[m]ental and emotional shocks are not uncommon in inmates, as in the death of a loved one, getting attacked by another inmate, or the prospect and/or reality of receiving a lengthy prison sentence."

Dr. Wilcox explained that on February 3, 2011, the Department of Corrections had requested that "Mental Health" evaluate defendant due to concerns about him possibly harming himself. Dr. Wilcox evaluated defendant for more than one hour. He determined that defendant should be placed on "15-minute checks" for the next 24 to 72 hours, given the nature of the charges against him, the fact that it was his first arrest, and the written expressions of hopelessness found in his cell. Dr. Wilcox was assigned to see defendant on a weekly basis, and had since seen him more than 25 times.

Dr. Wilcox indicated in his declaration that he was in court on the date set for defendant's preliminary examination. He was allowed to speak with defendant "at length while he was in the jury box contemplating a proposed disposition in his case." According to Dr. Wilcox, the disposition of defendant's case "appeared to be somewhat of a moving target, changing both in the number of counts he was to plead guilty to and the number of years he would receive as a sentence." Dr. Wilcox further stated: "In my professional opinion, [defendant] was experiencing acute stress reaction or shock during this time that I spoke with him and during the time that he was contemplating the proposed disposition. Pleading guilty to the charges proposed and receiving such a

6

lengthy prison sentence (in excess of 40 years) caused [defendant] to appear in the courtroom with symptoms of disorientation, poor attention span, and at time [*sic*] he was unable to understand or respond to present stimuli. This may be referred to as a daze." After referring to defendant's no contest pleas and his agreement to 48 years in prison, Dr. Wilcox stated: "In the courtroom at that time, [defendant] was physically flushing and he reported a rapid heartbeat. I noted that he was confused, detached and his judgment was impaired as I spoke with him then." Defendant indicated to Dr. Wilcox that he did not have enough time to make such an important decision.

Dr. Wilcox stated that he also spoke to defendant the next day at Elmwood Correctional Facility. According to Dr. Wilcox, defendant "presented with a common symptom of acute stress reaction of partial amnesia when trying to remember our conversation in court and some other court proceedings at the time he entered his pleas." Dr. Wilcox concluded: "In my professional opinion, [defendant] did not have the capacity needed to make a coherent and logical decision, given the stressor of the courtroom environment, the immediate time constraints, and the psychological trauma of facing 48 years in prison. These stressors were more than enough stimuli to create an acute stress reaction which impaired [defendant] at that time."

In a declaration signed on September 7, 2011, defendant stated that the preliminary examination was scheduled for July 14, 2011. He had not received "an offer of a term of years before that date, and had been informed of many new developments in terms of discovery in the two days preceding that court date." While he was in court on July 14, his counsel attempted to "negotiate a settlement of a term of years as opposed to the life sentence which was what [he] would have received had [he] been convicted of all the charges." He was "overwhelmed by the need to make a decision in such a short period of time" and asked to speak with Dr. Wilcox. He was allowed to speak privately with Dr. Wilcox for "perhaps 15 minutes." According to defendant: "That whole morning and afternoon was such a blur to me, and I was confused and in shock at the

number of years I was asked to accept, and I was not able to think clearly and to comprehend what I was doing at the time. [¶] . . . Due to the fact that I did not have enough time to make this life-changing decision, and due to the fact that I was also overcome with emotion about seeing people in the courtroom that I hadn't seen for a long time, including my brother, and due to the fact that I was not thinking clearly, I made a decision to accept the offer which I now believe was an erroneous decision, and I ask the court to allow me to withdraw my pleas and go ahead with the preliminary hearing in this case."

### 4. The hearing on the motion and sentencing

On September 7, 2011, the date set for sentencing, a hearing was held on defendant's motion to withdraw his no contest pleas. The trial court observed that defendant's motion did not "cite any [ineffective assistance of counsel] issues or any defect in the *Boykin-Tahl* waiver procedures[5]" but rather was based "primarily on [defendant's] psychology and state of mind at the time the plea was taken." Defense counsel stated that it was his recollection that the court conducted "a full and complete voir dire" of defendant at the time the no contest pleas were entered. The prosecutor and defense counsel subsequently agreed that there was no allegation in defendant's motion concerning "constitutional infirmity . . . or defect in the change of plea itself" or concerning ineffective assistance of counsel. The prosecutor and defense counsel also indicated that they were submitting the matter on defendant's motion papers.

The trial court then ruled as follows: "[T]he court having read and reviewed the declarations *even assuming that the factual allegations in the declarations are true* and noting that . . . they've not at all been tested by cross-examination of the parties and that there is no live witness testifying to what the declarants testify to, based upon the case law of the State of California, based upon the court's own recollection of the very

---

[5] *Boykin v. Alabama* (1969) 395 U.S. 238; *In re Tahl* (1969) 1 Cal.3d 122.

8

thorough voir dire process in which the defendant was fully engaged and given the opportunity on multiple occasions to state any hesitations, reservations or qualifications to his pleas and supported by the transcript which will be placed in the court file soon, now the court finds that the defendant has failed to make the standard of proof required for such a motion, that is proof by clear and convincing evidence that the defendant didn't know what he was doing at the time. The court finds he did know what he was doing, accordingly the motion will be denied." (Italics added.) The trial court sentenced defendant to 50 years in prison.

## B. *The First Appeal – Wilson I*

In his first appeal, defendant contended that the trial court abused its discretion in denying his motion to withdraw his pleas, and that his state and federal constitutional rights were violated.

The *Wilson I* court made the following determination. The declarations by Dr. Wilcox and defendant, if "assum[ed]" to be "true" as stated by the trial court, could have provided sufficient support for the court to conclude that defendant's no contest pleas were involuntary. However the trial court also considered its own recollection of the plea hearing, and the court believed that a "very thorough voir dire process" had occurred; that "defendant was fully engaged and given the opportunity on multiple occasions to state any hesitations, reservations or qualifications to his pleas"; and that defendant "did know what he was doing." The evidence before the trial court was thus clearly contradictory regarding whether defendant's no contest pleas were voluntary, based on the declarations of Dr. Wilcox and defendant and the trial court's own recollection of the plea hearing. Where the evidence is contradictory, a trial court is entitled to resolve the factual conflict against the defendant. Here, the trial court was required to clearly resolve the factual conflict in order to properly rule on the motion because the declarations could have presented a sufficient basis upon which to grant defendant's motion. Because it was not clear from the trial court's comments how the

9

trial court resolved the factual conflict, the *Wilson I* court remanded the matter for further hearing on defendant's motion. The *Wilson I* court stated that the further hearing "may include live testimony and cross-examination" but "express[ed] no opinion as to how the court should resolve the factual conflicts, or as to the outcome of the motion." (*Wilson I*, *supra*, H037600, at p. 14.)

### C. *Trial Court Proceedings after Remand*

On remand, a different judge conducted the further hearing on defendant's motion, as the judge who originally took defendant's pleas and heard the motion to withdraw the pleas had since retired. At the further hearing on May 14, 2013, the trial court indicated that it had reviewed this court's opinion in *Wilson I*, as well as the transcripts related to the motion, the court trial, and the plea hearing. The court asked whether defense counsel had "anything further at this time." Defense counsel responded, "if the court needed to hear from . . . Dr. Wilcox, I would be happy to put this matter over and get him to court if you needed further information from him." The court turned its attention to the prosecutor, who submitted the matter without any argument. The court stated that it had reviewed defendant's notice of motion, motion to withdraw pleas, and attached documents, including Dr. Wilcox's declaration. The court stated that it did "not believe that it need[ed] to call as a witness Dr. Wilcox, nor have him make any further statement to the court on the defendant's behalf."

The trial court subsequently discussed Dr. Wilcox's declaration. The court observed that the declaration consisted of three pages – one full page and two partial pages. One-third to one-half of the declaration set forth Dr. Wilcox's background and experience, while approximately one-fourth of the declaration reflected his observations on the date of the plea hearing. Dr. Wilcox's ultimate conclusion occupied the final five to seven lines of his declaration. The court found that "[t]he portion of [Dr. Wilcox's] opinion which is based upon interviews that he had with the defendant is a relatively minor portion of his declaration." The court believed that the original judge who took

10

defendant's pleas was presumably "more familiar with the legal standard necessary to render a judgment on whether or not the motion to withdraw the plea should be granted. And, more importantly, was directly engaged in conversation with the defendant at the time the plea was taken, and was certainly party to the observations in a more direct fashion than the observer capacity that Dr. Wilcox had during the time at which the change of plea was entered."

The trial court also discussed the nature of the plea. The court explained that "the nature of this plea was unusually sophisticated and complicated. The defendant was facing a number of charges with significant consequences. He was represented by an extraordinarily competent and experienced counsel. [¶] This plea was not a plea to all charges, it was a hybrid plea entered into on the date for the preliminary examination where there was a partial change of plea to some of the charges to an amended complaint, with an agreement that there would be a court trial to other charges."

The trial court found that, "[b]ecause of the unusual and sophisticated nature of the plea, . . . the oral voir dire taken of the defendant by [the original judge] was exceptionally thorough, and on a number of occasions made sure, not only that the defendant understood what was going on, but that there was no undue influence, confusion, or misunderstanding of rights or consequences, that there was no duress with regard to any aspect of the plea." In this regard, the court observed that the original judge "asked questions that were not leading. Meaning, that of the various questions that were asked in the voir dire, . . . [the] answers given by [defendant] to the court's inquiry were both 'yes's' and 'no's.' That there was no suggestion as to the answers. That in each instance in reviewing this transcript that [defendant] answered directly, answered succinctly, and answered correctly."

The trial court explained as follows: "Specifically, when the [original judge] asked, 'So is your decision then to resolve these cases as I have just stated today a free and voluntary decision?' The defendant responded directly, 'Yes, your Honor.' [¶] The

11

[original judge] then asked 'has anyone threatened you . . . personally or anyone close to you to get you to enter into this plea today?'  The defendant answered directly, 'No.'  [¶] Later on when the [original judge] inquires 'have you had any trouble understanding the language or the concepts used in the court so far?'  The defendant says 'no, sir.'  [¶]  The next question 'have you taken any medicine or alcohol recently which is in any way adversely affecting your ability to understand these proceedings?'  'No.' "

The trial court further observed that defendant engaged in varied responses, including, " 'yes, your Honor,' " " 'no,' " " 'no, sir,' " and " 'yes, sir.' "  The court stated that "it appear[ed] that [the original judge], in taking the plea, took note of the fact that the defendant was engaged not with a rote recitation of one word single syllable answers, but was, in fact, engaged with the court."

The trial court referred to some of the particular questions posed to defendant and to counsel.  The court noted that the original judge asked defendant whether he had any questions he wanted to ask the judge before his plea was taken on the amended complaint, and defendant responded " 'no, sir, your Honor.' "  Further, the original judge asked defense counsel and the prosecutor whether " 'any further voir dire' " was " 'suggested at this point,' " and neither counsel suggested any.  Defense counsel was asked by the original judge whether he was " 'satisfied' " that defendant understood his rights and was " 'freely and voluntarily giving them up,' " and counsel responded affirmatively.  Defense counsel was again asked whether he would suggest any further voir dire, and counsel again responded in the negative.  Defense counsel also indicated that he was satisfied that defendant was " 'conversant with the particulars of the allegations as to each of these many counts.' "  Defense counsel and the prosecutor also stipulated to a factual basis for the pleas based on several " 'offense reports.' "

The trial court concluded:  "Based upon the overwhelming amount of the evidence.  Based upon an impartial review by this court at the time of the plea.  Based upon what the court believes is a cursory declaration by Dr. Wilcox in support of the

12

motion to withdraw that any factual discrepancy that may have been alluded to when [the original judge] said that he was going to take the findings of Dr. Wilcox and assume they were true, was incorrect or was a misstatement inadvertently made by [the original judge], and that the evidence in this case overwhelmingly supports the fact that the observations, and more to the point the conclusions based upon the observations of Dr. Wilcox were not legally sufficient to overcome the findings correctly made by the trial court.  And, in fact, they were not assumed to be true but were, in fact, found to be insufficient to overcome the factual findings of the court and the application of law which caused [the original judge] to deny the motion.  [¶]  And as the result . . . this court will again deny the motion to withdraw the plea"

On September 3, 2013, defendant was resentenced to 50 years in prison. Defendant filed a notice of appeal and obtained a certificate of probable cause.

### III.  DISCUSSION

Defendant contends that the trial court abused its discretion on remand in denying his motion to withdraw his pleas because the court did not follow the law of the case and its ruling was not supported by substantial evidence.  Defendant further contends that the denial of his motion violated his state and federal constitutional rights.

The Attorney General contends that the trial court did not abuse its discretion and that defendant's constitutional rights were not violated.

We first set forth the general principles of law governing a motion to withdraw a plea before considering the specific contentions made by defendant in this appeal.

#### A.  *General Legal Principles Regarding a Motion to Withdraw a Plea*

Section 1018 allows the trial court to grant a defendant's request to withdraw his or her plea of guilty or no contest "before judgment . . . for a good cause shown." "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea.  [Citations.]  But good cause must be shown by clear and convincing evidence.  [Citations.]"  (*People v. Cruz* (1974) 12 Cal.3d 562, 566;

13

accord *People v. Sandoval* (2006) 140 Cal.App.4th 111, 123; *People v. Mickens* (1995) 38 Cal.App.4th 1557, 1561.)

A plea "is 'involuntary' if done without choice or against one's will." (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.) A plea may not be withdrawn simply because the defendant has changed his or her mind (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456), or because the plea was made reluctantly or unwillingly by the defendant (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208-1209 (*Huricks*); *People v. Hunt* (1985) 174 Cal.App.3d 95, 103-104 (*Hunt*); *People v. Urfer* (1979) 94 Cal.App.3d 887, 892-893). Further, a defendant claiming that he or she was pressured into the plea must demonstrate that it was more than the pressure experienced by "every other defendant faced with serious felony charges and the offer of a plea bargain." (*Huricks*, *supra*, at p. 1208.)

In ruling on a motion to withdraw a plea, the trial court may consider the court's own observations of the defendant, as well as "take into account the defendant's credibility and his interest in the outcome of the proceedings. [Citations.]" (*People v. Ravaux* (2006) 142 Cal.App.4th 914, 918.) Where the evidence is contradictory, the trial court is "entitled to resolve the factual conflict against" the defendant. (*Hunt*, *supra*, 174 Cal.App.3d at p. 104.) "Where two conflicting inferences may be drawn from the evidence, it is the reviewing court's duty to adopt the one supporting the challenged order. [Citation.]" (*Ibid.*)

We review the trial court's denial of a motion to withdraw a plea for abuse of discretion. (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 (*Fairbank*).) In making that determination, we adopt the trial court's factual findings if supported by substantial evidence. (*Ibid.*) We " 'will not disturb the denial of a motion unless the abuse is clearly demonstrated.' " (*People v. Wharton* (1991) 53 Cal.3d 522, 585 (*Wharton*).) "A discretionary order based on the application of improper criteria or incorrect legal assumptions is *not* an exercise of *informed* discretion and is subject to reversal even

14

though there may be substantial evidence to support that order.  [Citations.]"  (*F.T. v. L.J.* (2011) 194 Cal.App.4th 1, 26; accord *In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *People v. Knoller* (2007) 41 Cal.4th 139, 156.)

### B.  *Law of the Case*

In contending that the trial court abused its discretion on remand in denying his motion to withdraw his pleas, defendant first argues that the court did not follow the law of the case regarding the "value" or "legal standing" of the supporting declarations, particularly with respect to Dr. Wilcox's declaration.  According to defendant, the original judge assumed Dr. Wilcox's and defendant's declarations were true, but the trial court on remand "degrade[d] the Wilcox declaration" by pointing out flaws in that declaration.  Defendant contends that the fact that the original judge "assumed both declarations to be true was part of the record" before the court on remand, and that "the *prima facie* validity of the declarations . . . is the law of the case" because no new evidence was introduced at the hearing on remand.

"Under the law of the case doctrine, when an appellate court ' "states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . ." ' [Citation.]  . . .  As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact.  [Citation.]"  (*People v. Barragan* (2004) 32 Cal.4th 236, 246 (*Barragan*).)

In defendant's prior appeal, the *Wilson I* court determined that Dr. Wilcox's and defendant's declarations "could have provided sufficient support for the [original judge] to conclude that defendant's no contest pleas were involuntary."  (*Wilson I*, *supra*, H037600, at p. 13.)  The *Wilson I* court observed, however, that the original judge's expressed recollections of the plea hearing conflicted with those declarations.  The *Wilson I* court explained that, because the evidence was contradictory regarding whether

15

defendant's no contest pleas were voluntary, the court below "was required to clearly resolve the factual conflict in order to properly rule on the motion." (*Id.* at pp. 13-14.)  In remanding the case for further hearing on the motion, the *Wilson I* court expressed "no opinion" as to how the trial court "should resolve the factual conflicts, or as to the outcome of the motion." (*Id.* at p. 14.)

On remand, therefore, the trial court was obligated to conduct a new hearing to clearly resolve the factual conflict.  Nothing in *Wilson I* required the trial court on remand to accept Dr. Wilcox's declaration as true on the issue of the voluntariness of defendant's pleas.  Further, nothing in *Wilson I* precluded the trial court on remand from giving certain sources or pieces of evidence—declarations or otherwise—less or more weight than other evidence on the issue of whether defendant's pleas were voluntary.  To the contrary, because the evidence was conflicting, the trial court on remand necessarily had to evaluate and weigh the evidence in order to reach a proper determination of the motion.  Accordingly, the trial court on remand properly resolved the factual conflict when it evaluated the evidence and decided that Dr. Wilcox's declaration was entitled to less weight on the issue of the voluntariness of defendant's pleas.  (See *Barragan*, *supra*, 32 Cal.4th at p. 246; *Hunt*, *supra*, 174 Cal.App.3d at p. 104.)

## C.  *Substantial Evidence*

Defendant also contends that there is not substantial evidence to support the following determination by the trial court on remand:  "when [the original judge] said that he was going to take the findings of Dr. Wilcox and assume they were true, [this] was incorrect or was a misstatement inadvertently made by [the original judge] . . . ."  Defendant argues that this determination by the trial court on remand "was not based upon any new evidence."

As we have just explained, the trial court was obligated on remand to conduct a new hearing to clearly resolve the factual conflict presented by the motion.  Nothing in *Wilson I* required the trial court on remand to adhere to factual determinations that the

16

original judge may have made, or to try to explain the basis for the original judge's ruling. Further, the *Wilson I* court did not require on remand live testimony or the presentation of additional evidence. The trial court on remand was simply obligated to resolve the factual conflict concerning voluntariness after evaluating and weighing the evidence presented.

In sum, the record reflects that the trial court on remand conscientiously followed the directions in *Wilson I* and carefully considered the evidence concerning defendant's motion, including the declarations and transcripts of the plea hearing and motion hearing. The court on remand determined that Dr. Wilcox's declaration was "cursory," and that he was not "directly engaged in conversation" with defendant, as the trial judge had been, when the pleas were actually entered. Further, defendant was represented by "an extraordinarily competent and experienced counsel" during the plea hearing, and defendant did not enter no contest pleas to all the counts but rather exercised his right to trial on one of the counts. The voir dire of defendant during the plea hearing was "exceptionally thorough," and defendant responded "directly," "succinctly," and "correctly" with varied answers. It thus appeared that defendant was engaged with the court when the pleas were taken, rather than in shock, confused, disoriented, with poor attention span, and unable to understand or respond to stimuli, as Dr. Wilcox in a declaration had characterized defendant, and as stated in defendant's declaration. The trial court's factual determinations on remand are supported by substantial evidence (see *Fairbank*, *supra*, 16 Cal.4th at p. 1254), and we find no abuse of discretion in the denial of defendant's motion to withdraw his pleas (see *ibid.*; *Wharton*, *supra*, 53 Cal.3d at p. 585). We accordingly determine that defendant's constitutional claims, which are premised on his pleas not being voluntary, are without merit.

## IV. DISPOSITION

The judgment is affirmed.

17

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:


_____
ELIA, ACTING P.J.




_____
MIHARA, J.