Filed 4/29/14  P. v. Perez CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064436 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CRN19571) |
| JESUS M. PEREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Charles R. Gill, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Meagan J. Beale and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

Jesus Perez appeals from the trial court's denial of his motion to vacate his conviction and withdraw his guilty plea on the grounds that he was not advised of the

possible immigration consequences. He contends the court abused its discretion in denying the motion on the basis of untimeliness and lack of prejudice. We hold the record supports the court's finding of no prejudice, and affirm. Given this holding, we need not evaluate Perez's challenge to the court's untimeliness finding.

BACKGROUND

*The Guilty Plea*

In December 1969, Perez, age 22, was charged with assault with intent to commit rape (Pen. Code,[1] § 220) and residential burglary (§ 459). Perez was a Mexican citizen with legal permanent resident status in the United States. In April 1970, he pled guilty to the assault charge. The guilty plea form states the prosecutor agreed to dismiss the burglary charge and to take no position at sentencing. Further, Perez was advised that the possible sentence arising from the plea was one to 20 years in prison and that probation was possible.

According to information set forth in the probation report, the charged incident occurred on November 6, 1969, after Perez had been drinking alcohol at a cafe with a friend. Shortly after midnight, Perez's friend drove him to a different street and dropped him off. Perez then entered a residence and went into the bedroom of a nine-year-old girl who was asleep in her bed. Perez went to the side of her bed and grabbed her around the neck in a choking manner. When Perez relaxed his grip, the girl screamed. Perez ran out

---

[1]     Subsequent statutory references are to the Penal Code.

2

of her bedroom and was apprehended in the living room by the victim's adult male relative. The victim had scratches and bruises on both sides of her neck.

Perez told the authorities that he was drunk and did not remember how he got into the victim's house. He stated he remembered being inside a house, seeing "a big girl in a bed" with whom "he wanted to have sex"; grabbing her around the face and mouth to try to keep her from screaming; and the next thing he knew a "big man" was choking him. When asked if he had intended to rape the girl, he responded that "he was thinking of raping her."

When interviewed by the probation officer, Perez said that while drinking at the cafe he met an "older woman" (about age 30) who told him she wanted to have sex with him but she could not leave with him at that time because she was with two other women. Later, when Perez's friend dropped him off, he thought he saw the woman and her friends walking about one block away from him and entering a house. He went in their direction, but he apparently entered a different house. He opened the front door looking for the woman, and went into the bedroom with the intention of having sex with the woman. He told the probation officer "everything was hazy during this period"; he did not know why he choked the girl although he thought he wanted to "scare her"; and he "really doesn't remember" his conduct. He said he felt responsible for and was sorry about his conduct, and he pled guilty to assault with intent to commit rape "because he was in fact looking for the other woman and would have attempted sex with her had he found her."

3

The probation report states that defendant came to the United States in 1964 and he was working as a carpenter's helper and living with his parents.[2] He had several prior convictions, apparently related to problems with alcohol and drugs, including disturbing the peace, driving under the influence, and unauthorized entry of property (when he was "prowling" in a stranger's yard). When he committed the current assault offense, he was on probation for the driving under the influence offense, and he had pled guilty to the unauthorized entry offense only 10 days earlier. The probation officer opined that the nature of the current offense was "extremely serious" and "could have resulted in great bodily harm to the young girl." The probation officer assessed that probation had been "rather unsuccessful," and Perez's serious problems arising from alcohol or drug use had "now reached the point where stronger controls" were needed to curtail his behavior. The probation officer recommended probation and a one-year placement in a county honor camp where he could be provided a "long drying out period," counseling, and a "supportive program."

The trial court granted Perez three years of probation upon the condition that he serve six months in jail, with a recommendation that he be placed in the county honor camp.

---

[2] In a declaration submitted in support of his motion to vacate his conviction, Perez stated he came to the United States in 1957, and he became a legal permanent resident in 1964.

*Motion to Vacate the Conviction*

On May 30, 2013, Perez moved to vacate his conviction and withdraw his guilty plea on the grounds that he was not advised of the possible immigration consequences of his plea. The trial court was presented with the following information.

In about 2003 or 2004, Perez was arrested by Immigration and Naturalization Service (INS) officers and removal proceedings were commenced against him based on his 1970 conviction. In February 2005, the Board of Immigration Appeals (BIA) affirmed an immigration judge's April 2004 decision denying Perez's application for relief. The BIA found that although Perez presented "outstanding equities" including "long residency and close family ties," these factors were not outweighed by his "long criminal history, which spans from the late 1960s to 1994, and includes a 1970 conviction for assault with intent to rape (involving a 9-year-old victim), and a 1994 conviction for false information which resulted in 3 years of incarceration." Further, although he had been sober since 1994, "the length of sobriety is counterbalanced by the length of [his] criminal history, and the nature of his crimes."

In March 2011, the Ninth Circuit Court of Appeals granted Perez's petition challenging the BIA's order, based on the Ninth Circuit's determination in another case that a federal statute used in Perez's case did not apply to convictions before 1988. The Ninth Circuit remanded the case for further proceedings, but Perez was apparently unsuccessful in obtaining relief. On February 15, 2012, the Department of Homeland

5

Security served him with an arrest warrant and released him on his own recognizance, and a removal hearing before the immigration court was set for August 2013.[3]

Perez was represented by an attorney during the federal deportation proceedings. At some point in 2011, he hired a different immigration attorney, and this attorney referred him to attorney Danna Cotman for purposes of investigating whether his 1970 conviction could be overturned. Perez hired Cotman in June 2012. In May 2013 (about nine or 10 years after the commencement of the INS removal proceedings in 2003 or 2004), Cotman filed the motion to vacate Perez's conviction and withdraw his guilty plea. Perez contended the motion should be granted because at the time of the plea he was not advised of the potential immigration consequences, and he acted promptly to vacate his conviction once an attorney advised him that he could pursue this relief.

In support, Perez submitted a declaration stating that in 2004 he was arrested and told he was to be removed from the country; this was the first time he realized his status in the United States was in jeopardy; and he had thought his "previous convictions had all been resolved upon completion of probation." He stated that when he pled guilty in 1970, he thought he was pleading guilty to trespassing and that he would be incarcerated for six months, and his attorney did not tell him he could lose his status as a legal resident and be permanently deported. He claimed that if he had been informed of the immigration consequences, he would not have agreed to the plea and "would have gone

---

3    The record does not include court documents reflecting what occurred on remand from the Ninth Circuit. However, the parties agree that Perez did not obtain relief from removal.

to trial and risked being sentenced to jail for years over taking a plea that guaranteed deportation away from my family and home."

In its opposition, the prosecution conceded it could not show Perez was advised of the possible immigration consequences, but argued the motion should be denied as untimely because it was not filed until 10 years after Perez knew of the possible immigration consequences. Further, the prosecution asserted there was no showing Perez would have declined the plea offer had he been properly advised.

Denying the motion, the trial court found it was not filed until an "inordinate amount of time" had passed after Perez became aware of the immigration consequences in 2003. Further, the court found Perez had not shown that he would not have pled guilty if he had been advised of the immigration consequences. The court assessed that Perez would have been "very concerned" if he was advised of the immigration consequences, but given the evidence showing his commission of a serious crime this was not enough to show he would not have pled guilty. The court stated that although it appreciated that Perez had "turned his life around" and "made significant progress," its decision had to be based on California law and not on the policy issues underlying the "federal law as it relates to immigration and immigration consequences."

DISCUSSION

As stated, we need not address the trial court's finding of untimeliness because the record supports the court's finding of no prejudice.

To obtain vacation of a conviction and withdrawal of a plea for failure to advise of immigration consequences, the defendant must establish that it is reasonably probable he

or she would not have pled guilty if properly advised. (*People v. Martinez* (2013) 57 Cal.4th 555, 559, 562; § 1016.5.) The test is *not* whether there is a reasonable probability of a more favorable outcome had the plea been rejected, but rather whether there is a reasonable probability the defendant would have decided to reject the plea. (*Martinez, supra*, at pp. 559, 562 ["The test for prejudice thus considers *what the defendant would have done*, not whether the defendant's decision would have led to a more favorable result."], italics added.) However, the strength of the prosecution's case against the defendant is a relevant factor to consider when deciding whether the defendant would have accepted or rejected the plea offer had the proper advisements been provided. (*Id.* at p. 564.)

On appeal, we review the trial court's ruling for abuse of discretion. (*People v. Martinez, supra*, 57 Cal.4th at p. 568; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192, 210.) We draw all reasonable inferences in favor of the trial court's ruling and cannot disturb its decision unless abuse of discretion is clearly shown. (*People v. Quesada* (1991) 230 Cal.App.3d 525, 533; *People v. Knight* (1987) 194 Cal.App.3d 337, 344.)

The record shows that there was compelling evidence that Perez committed assault with intent to commit rape, and accordingly the trial court could reasonably find that if Perez had been properly advised on immigration consequences he would have understood that if he went to trial he would likely be convicted and be subject to deportation. According to the probation report, Perez was captured after midnight inside a stranger's home; the nine-year-old victim had scratches and bruises on her neck; and Perez told the

authorities he wanted to have sex with the victim. Although Perez could have raised an intoxication defense, the court could deduce that it was unlikely a jury would accept this defense given the purposeful nature of Perez's conduct of entering a stranger's home followed by his entry into the bedroom of a sleeping female. Contrary to Perez's contention, this is not a case suggesting an intoxicated defendant who merely "stumbled" into criminal conduct.

Further, the record supports that the plea negotiations included an understanding that if Perez accepted the plea offer he increased his chances of avoiding a prison sentence. The guilty plea form states that the sentence for the assault offense was one to 20 years, but that probation was possible and the prosecutor would take no position as to his sentence. In his declaration in support of his motion to vacate the conviction, Perez states that at the time of his plea he thought he would be incarcerated for six months. Considering these matters together, the trial court could reasonably infer that during the plea negotiations Perez was told that if he accepted the plea offer the prosecutor would not object to probation and he would likely receive probation and local jail time rather than a prison sentence.

Additionally, Perez has not presented anything to suggest that had he been advised of the immigration consequences and discussed this with his counsel, he might have rejected the plea offer based on an expectation that his counsel could secure a plea to a lesser offense that would avoid adverse immigration consequences. (See *In re Resendiz* (2001) 25 Cal.4th 230, 253-254; *People v. Martinez, supra*, 57 Cal.4th at pp. 566-567.) The particularly egregious facts of the offense—involving entry into a stranger's home

late at night and an attack on a vulnerable child—support that Perez would have been advised that the prosecutor was not amenable to a plea to a substantially lesser offense.

Considering all these circumstances, the trial court could conclude that upon proper advisement Perez would have faced essentially two choices: (1) go to trial, likely be convicted, increase the odds of going to prison, and then be subject to deportation, or (2) plead guilty, increase the odds of *not* going to prison, and then be subject to deportation. Because possible deportation was a consequence likely to result from a trial as well as a guilty plea, the record supports that Perez would have selected a guilty plea to improve his chances of avoiding prison. As observed by our high court, "[t]he choice . . . that petitioner would have faced at the time he was considering whether to plead, even had he been properly advised, would *not* have been between, on the one hand, pleading guilty and being deported and, on the other, going to trial and avoiding deportation. While it is true that by insisting on trial petitioner would for a period have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences." (*In re Resendiz, supra*, 25 Cal.4th at p. 254.)

Based on the showing that there was compelling evidence that Perez committed assault with intent to commit rape and hence he would likely incur a conviction and be subject to deportation regardless of whether he went to trial or pled guilty, the trial court reasonably concluded that upon proper advisement there was no reasonable probability he would have rejected a plea offer that increased his odds of not going to prison.

10

DISPOSITION

The order is affirmed.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.