Filed 6/25/15  P. v. Blackmon CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JASON KYLE BLACKMON,<br><br>    Defendant and Appellant. | F068462<br><br>(Madera Super. Ct.<br>No. MCR045570)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Gomes, J. and Detjen, J.

## INTRODUCTION

Appellant/defendant Jason Kyle Blackmon pleaded guilty to attempted murder and was sentenced to nine years. On appeal, his appellate counsel filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).) By letter on April 24, 2014, we invited defendant to submit additional briefing. Defendant has filed a letter brief and claims his defense attorney was prejudicially ineffective and misled him during plea negotiations. We affirm.

## FACTS[1]

On February 17, 2013, defendant and his wife were at his sister's house. They were in the midst of a contentious divorce. Defendant knew his wife had an affair with John K. (John), the victim, but thought they could work out their problems.

John drove up to the residence of defendant's sister. When he arrived, defendant's wife walked up to his car; defendant also appeared. John did not know defendant was at his sister's house. Defendant approached John's car, and John exited his vehicle. Defendant asked John why he was there. Suddenly, defendant stabbed John in the shoulder and stomach. John suffered a three and one-half inch horizontal wound to his stomach.

When defendant was taken into custody, he claimed to have consumed 15 shots of vodka. Defendant's wife said she had six to eight shots of vodka. Defendant's wife reported that defendant previously made numerous comments about killing John. Defendant later claimed that John regularly threatened him and said he carried a gun.

---

[1] The facts are from the probation report and the reports from the sheriff's department, which were introduced as exhibits at the plea hearing and included within the probation report.

**Procedural history**

On February 20, 2013, a complaint was filed in the Superior Court of Madera County charging defendant with attempted premeditated murder (Pen. Code, §§ 664/187, subd. (a)),[2] with enhancements for personal use of a deadly weapon, a knife (§ 12022, subd. (b)(1)), and personal infliction of great bodily injury (§ 12022.7, subd. (a)).

On February 20, 2013, defendant appeared with his appointed counsel and pleaded not guilty.

On March 19, 2013, defendant substituted Scott Levy, a privately retained attorney, in place of his appointed counsel.

**Plea proceedings**

On August 30, 2013, defendant appeared at a change of plea hearing with Mr. Levy. Mr. Levy stated there had been "extensive discussions with the Court" for a negotiated disposition. Mr. Levy said the prosecutor would strike the premeditation allegation, which would result in a possible sentence of either five, seven, or nine years; defendant would enter an open plea; and the defense would introduce mitigating evidence at the sentencing hearing. The prosecutor agreed with the terms and moved to dismiss the premeditation allegation. The court asked defendant if there had been any other promises made to him to induce a plea. Defendant said no.

The court dismissed the premeditation allegation. It reviewed defendant's change of plea form, and asked defendant if he read, understood, initialed, and signed the document. Defendant said yes. The court asked defendant if he had sufficient time to speak with his attorney about the change of plea, and defendant said yes.

The court advised defendant of his constitutional rights; defendant stated he understood and waived his rights.

---

[2] All further statutory citations are tot the Penal Code unless otherwise indicated.

The prosecutor asked the court to consider the reports from the sheriff's department as the factual basis. Defense counsel did not object, and the court accepted the reports into evidence as exhibits.

The court advised defendant that as a result of his plea to attempted murder, he could be incarcerated for up to nine years; defendant said he understood. Thereafter, defendant pleaded guilty to attempted murder.

The prosecutor reminded the court that defendant had not admitted the enhancements.

> "THE COURT: … That wasn't discussed as part of the agreement when he entered his plea. So … what [the prosecutor] is suggesting is that not only are you pleading to the maximum of nine years on the underlying felony, the violation of [sections] 664/187, the attempted murder, but there are also sentencing enhancements that include the use of a deadly weapon and the fact that great bodily injury resulted from your crime. Those weren't included in the plea form either.
>
> "MR. LEVY: I can interlineate those.
>
> "THE COURT: Well, they need to be included in the plea form because it's going to impact his exposure is [*sic*] significantly more than nine years.
>
> "[THE PROSECUTOR]: It adds three, four more years total.
>
> "THE COURT: All right. *[D]o you understand, sir, that with the addition of the special allegations you could be incarcerated for up to 14 years? Do you understand that, sir*?
>
> "THE DEFENDANT: *Yes*.
>
> "THE COURT: *Does that change your decision in any way to enter into the plea agreement*?
>
> "THE DEFENDANT: *No*." (Italics added.)

Defendant admitted the personal use and great bodily injury enhancements.

## Sentencing hearing

On October 3, 2013, defendant appeared for the sentencing hearing with Mr. Levy. The court stated it had read the probation report, defendant's sentencing statement in mitigation, and letters submitted by John.

Mr. Levy asked the court to impose "the nine-year suspended lid" and place defendant on probation with time in county jail. Mr. Levy argued the prosecutor had overcharged the case as attempted murder instead of assault; defendant believed John was carrying a loaded weapon and looking for him; and defendant acted in the heat of passion because he and John were fighting over the same woman.

Defendant addressed the court and said he was not a violent man, and he truly believed John was going to shoot and kill him that night. Defendant said he was terrified and was trying to protect his wife and family. He had no "ill will" against John and was sorry it happened; he wished John and his wife well in their future relationship.

Defendant said:

> "I turned down a five-year offer from the DA *so I could have a chance for probation* and to prove myself to this Court and to my children. The smallest chance was worth it to possibly … be with my boys again. They are my world.
>
> "Again, I was just a man that made a huge mistake. I thought I was protecting my life and my family's. Please show mercy so I can make this Court and also my boys proud of me again. I am sorry and remorseful to the victim." (Italics added.)

The prosecutor stated that while defendant was remorseful, he needed to be held accountable for his conduct. Defendant committed an unprovoked attack upon John, and it was pure luck that John survived. There was no evidence from anyone, aside from defendant's self-serving statements, that John had threatened defendant or that he was carrying a gun that day. There was no evidence of mutual combat or a fight, and John did not touch or provoke defendant in any way.

5.

Mr. Levy replied that defendant was accepting full responsibility and probation was appropriate because "this is a heat of passion where he's with his family during family time and the estranged lover comes over to his house."

The court stated defendant was ineligible for probation because he used a deadly weapon and intentionally inflicted great bodily injury, and it was not an unusual case where the interests of justice would be served by probation.

The court found the mitigating factors outweighed the aggravating factors and imposed the lower term of five years, plus three years for the great bodily injury enhancement and one year for the personal use enhancement, for an aggregate term of nine years. The court imposed a criminal protective restraining order for defendant to stay away from J.K.

On November 22, 2013, defendant filed a timely notice of appeal. He requested and received a certificate of probable cause, based on his claim that defense counsel was ineffective during plea negotiations and misrepresented the prison term he was going to receive.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. In response to this court's notice, defendant filed a letter brief and contends his attorney was ineffective and misled him about the plea negotiations. Defendant asserts his attorney convinced him not to take a five-year deal allegedly offered by the prosecutor; and his attorney said they could "do better" and "get probation" by submitting an open plea. Defendant claims he wanted to fight the case instead of taking a plea, but his attorney said the plea was his only option and he would get either probation or five years at the most.

Defendant also complains the special allegations were added during the plea hearing, and he was too scared and distraught to understand what was going on.

Defendant said he was shocked when he received nine years. He asked his attorney what was going on, and his attorney said he did not know.

A defendant's guilty plea and waiver of constitutional rights must be knowing, intelligent, and voluntary—"made with a full awareness of the nature of the right being waived and the consequences of the waiver…." (*People v. Smith* (2003) 110 Cal.App.4th 492, 500.) As set forth above, the court carefully advised defendant of the consequences of his plea to attempted murder. When the court addressed the enhancements, it advised defendant of the potential additional terms that would result from his admissions, and asked whether he still wanted to enter the plea. Defendant said yes.

Defendant was well aware that he was not guaranteed probation, and he faced substantially more time than five years. Defendant's statements at the sentencing hearing reflect this knowledge as he pleaded for mercy and asked the court for the "chance" to be placed on probation. "A plea may not be withdrawn simply because the defendant has changed his mind. [Citation.]" (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) "Postplea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. [Citation.]" (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.)

After further independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.