Filed 6/26/15  P. v. Macias CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LUIS SAUL MACIAS,<br><br>    Defendant and Appellant. | F068781<br><br>(Merced Super. Ct.<br>No. CRM027758)<br><br><br>**OPINION** |

-ooOoo-

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Merced County.  Ronald W. Hansen, Judge.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Poochigian, Acting P.J., Detjen, J. and Peña, J.

## INTRODUCTION

Appellant/defendant Luis Saul Macias pleaded no contest to attempted murder and was sentenced to the stipulated term of nine years.  On appeal, his appellate counsel filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record.  (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  By letter on May 15, 2014, we invited defendant to submit additional briefing.  Defendant has filed two letter briefs and claims the victim lied at the preliminary hearing about the circumstances of the offense.  We affirm.

## FACTS[1]

On May 7, 2013, defendant asked his teenage daughter, A.M., to call Miguel Gallegos and ask him to come to their house.  Gallegos was the cousin of defendant's wife, Gabriella.  Gallegos occasionally visited the house and drank beer with Gabriella.  Defendant did not like Gabriella to drink beer with Gallegos.  A.M. testified that earlier that day, defendant and Gabriella argued about Gallegos coming over the house and drinking with her.

A.M. sent a text message to Gallegos telling him that defendant wanted to talk to him "about the beers."  Gallegos testified he called A.M. and told her that he already talked to defendant.  However, Gallegos decided to go to defendant's house anyway.

A.M. testified Gallegos arrived at their house and sat on the couch.  Defendant stood near the couch, and he talked to Gallegos for a few minutes.  Gallegos testified that defendant asked him whether he had talked to Gabriella, and told him that he did not want beer in the house.  A.M. testified Gallegos was using his cell phone and seemed to be ignoring defendant.

A.M. and Gallegos testified defendant walked closer to Gallegos.  Defendant kept asking questions about Gabriella.  Defendant produced a kitchen knife, leaned down, and

---

[1] The following facts are from the preliminary hearing.

2.

stabbed Gallegos in the abdomen. Gallegos was bleeding and tried to run away. He turned his back to defendant, and defendant stabbed him in the lower back.

A.M. tried to hold defendant and told Gallegos to get away. Gallegos ran to the door but suddenly realized defendant was next to him. Defendant was still holding the knife. Defendant accused Gallegos of having an affair with Gabriella. Gallegos replied that defendant was stupid because "how could I get involved with my own cousin." Gallegos believed defendant wanted to stab him again and kicked defendant away from him.

Gallegos was in the hospital for five days and required surgery for the two stab wounds. The chest wound was two and one-half inches deep and went into his diaphragm. The back wound was one and one-half inches deep, penetrated his lung, and resulted in internal bleeding.

### Additional Facts

The following facts are from the police reports and summarized in the probation report. It states that deputies responded to defendant's house after the stabbing and detained defendant. Defendant told the deputies that he stabbed Gallegos because he believed Gallegos was having an affair with his wife. Defendant said Gallegos often came to the house and drank with his wife. Defendant placed a tape recorder under his wife's bed and recorded her talking to a man who he believed was Gallegos. Defendant admitted he planned to kill Gallegos. He also planned to assault the deputies when they arrived to arrest him, so they could kill him instead.

### Procedural History

On June 11, 2013, an information was filed in the Superior Court of Merced County which charged defendant with count I, attempted murder (Pen. Code, § 664/187, subd. (a)),[2] with the special allegations that defendant personally used a deadly weapon

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

(§ 12022, subd. (b)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). Defendant pleaded not guilty.

### Plea Hearing

On December 3, 2013, the court convened a hearing on defendant's possible plea. Defense counsel said defendant wanted to address the court, and the court agreed. Defendant asked for forgiveness from "the jury, and the Court, and my family." Defendant said he was not perfect, but he had never gotten into any trouble. "In my heart it was never my intention to cause harm to the victim or to kill him. The situation arrived all of a sudden, due to my rage, in trying to defend my family's honor." Defendant asked for compassion for himself and his family, and for the court "to reduce the charges even a little bit."

The court replied that defendant should ask forgiveness from Gallegos, who was the victim. The court said it had considered defendant's lack of a record and the circumstances of the offense, and it believed the lower term was appropriate, if he still wanted to enter the plea. The court called a recess for defendant to further discuss the matter with his attorney.

After the recess, defendant entered into a negotiated disposition and pleaded no contest to attempted second degree murder and admitted the special allegations, for a stipulated term of nine years. The court advised defendant of his constitutional rights and that he would be deported after he served the prison sentence. Defendant said he understood and waived his rights.[3]

---

[3] While defendant pleaded to "attempted second degree murder," the crime of attempted murder is not divided into degrees. The prosecution may seek a jury finding that an attempted murder was "willful, deliberate, and premeditated" for purposes of sentence enhancement. (§ 664, subd. (a); *People v. Smith* (2005) 37 Cal.4th 733, 740; *People v. Gonzalez* (2012) 54 Cal.4th 643, 654.) Such a finding or admission was not made in this case.

After he entered his plea, defendant told the probation officer that he messed up and took it out on the wrong person. Defendant said he did not intend to kill Gallegos but just wanted him to tell the truth. Defendant said he tried to help Gallegos by having his son take him to the hospital after the stabbing. Defendant believed the proper punishment would be two or five years, but knew he was going to be deported.

*Sentencing Hearing*

On January 15, 2014, the court conducted the sentencing hearing. Defense counsel stated the stipulated term was nine years, but defendant believed the court had discretion to impose a lesser term. The court replied that it had discretion to reject the plea in its entirety and send the matter back for trial, but it found no grounds to do so. Defendant addressed the court and said he wanted to appeal the decision because the sentence was not fair. The court replied that defendant could file an appeal.

The court denied probation and sentenced defendant to the lower term of five years for count I, plus one year for the deadly weapon enhancement and three years for the great bodily injury enhancement, for an aggregate term of nine years. The court awarded 253 days of custody credit and 38 days of conduct credits, for a total of 291 credits.

On January 24, 2014, defendant filed a timely notice of appeal.

On April 14, 2014, appellate counsel requested the superior court to correct defendant's credits.

On April 25, 2014, the superior court filed an amended abstract of judgment and awarded defendant actual credits of 254 days and conduct credits of 38 days, for a total of 292 days.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. In response to this court's notice, defendant filed two letter briefs and raises several issues. Defendant contends there are "inconsistencies" in the "testimonies," particularly about

5.

whether his wife was home when the "physical altercation" occurred. Defendant claims Gallegos lied at the preliminary hearing about how he was stabbed. Defendant admits he "cut" Gallegos because "he was ignoring me and I tried to get his attention," but claims they had a physical altercation because Gallegos attacked him. Defendant claims he never followed Gallegos to the door, and he tried to get help for Gallegos. Defendant also asserts his family reported that Gallegos said he did not want to file charges against him, and he finds it significant that Gallegos never signed a formal accusation against him.

We note that defendant failed to obtain a certificate of probable cause in this case. (§ 1237.5.) We also note that when defendant entered into his plea, he waived his constitutional rights, which included the right to a jury trial and to confront and cross-examine witnesses. (*People v. Panizzon* (1996) 13 Cal.4th 68, 80.) In any event, defendant's claim that Gallegos did not want to press charges are refuted by Gallegos's testimony at the preliminary hearing, where he expressed his anger and amazement that defendant stabbed him. Moreover, defense counsel cross-examined Gallegos at the hearing about the nature and circumstances of the stabbing, and Gallegos's account was corroborated by the testimony of defendant's daughter. Gallegos admitted that he tried to kick defendant, but explained that happened after defendant had already stabbed him twice, and he believed defendant was going to stab him again. None of the witnesses testified that defendant's wife was present when the stabbing occurred.

"A plea may not be withdrawn simply because the defendant has changed his mind. [Citation.]" (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.) "Postplea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty. [Citation.]" (*People v. Knight* (1987) 194 Cal.App.3d 337, 344.)

After further independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.