Filed 2/9/16  P. v. Gray CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. COREY DANYELL GRAY, Defendant and Appellant. | F070151 (Fresno Super. Ct. No. F12902431) **OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Brian F. Alvarez, Judge.

William A. Malloy, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

Appellant/defendant Corey Danyell Gray pleaded no contest to second degree robbery and was sentenced to five years in prison pursuant to a negotiated disposition. On appeal, his appellate counsel has filed a brief that summarizes the facts with citations

---

[*] Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).)  Defendant has filed a letter brief and contends he was forced to accept the plea.  We affirm.

## FACTS[1]

At 5:00 p.m. on March 28, 2012, officers from the Fresno Police Department responded to a dispatch that a silent alarm had been activated at Don Roberto's Jewelry Store.  Officer Troy Miller arrived in the store's parking lot within one minute of receiving the call.  He immediately encountered a witness who reported that two suspects had just robbed the store, and they left in a black Chrysler.  Officer Miller drove through the area but could not find the car.

The witnesses at the store reported that two men entered the store wearing blue bandanas over their faces; one man had a handgun.  The men ordered everyone to go to the back of the store.  They took $479 in cash, used a hammer and the gun to break into the jewelry displays, took approximately $113,000 worth of jewelry, and ran out to a black car.  The suspects left behind the hammer and some blood on the glass display cases.

The store's surveillance videotape depicted the two suspects and their black four-door Chrysler.  A witness said the last digit on the license plate was "2."

A confidential citizen informant gave two names to the police and said they were possibly responsible for the robbery and were selling the stolen jewelry.

On April 4, 2014, the police executed search warrants at the separate homes of the two men named by the confidential informant.  These two men did not commit the robbery.  During the course of the searches, however, the police obtained additional

---

[1] Given defendant's plea, the following facts are from the preliminary hearing and the probation report.

information that one of the robbery suspects was called "Gucci," and that Andrew Lee (Lee) was possibly the getaway driver.

Also on April 4, 2014, the police went to Lee's house and saw a black Chrysler 200 parked in front, and the last digit on the license plate was "2." The vehicle was a rental car. The officers obtained a search warrant for Lee's house. As they were serving the warrant at Lee's house, defendant arrived. Both defendant and Lee were arrested.

On April 5, 2012, the police interviewed Lee, who initially said he did not know anything about the robbery. The police advised Lee that they knew he sent text messages to various people on March 28, 2012, the day of the robbery, saying that he had gold, silver, and platinum jewelry to sell. Lee admitted that on the day of the robbery, "Fat Boy," "Gucci," and "Capo" asked to borrow the keys to the rental car. He gave the keys to "Fat Boy" and did not go with them. Lee said that when they returned, they had jewelry, and he was mad because they committed a robbery in his vehicle. Lee said "Gucci" did not get any of the jewelry, and the other guys took it all. Lee said "Capo" had the gun. Lee described "Capo" as a light-skinned African-American, and he had either a large tattoo or birthmark under an eye.

Based on Lee's information about "Capo" and where he lived, the police determined "Capo" was Justin McLean (McLean). Lee was shown a photograph of McLean and confirmed he was "Capo."

The police executed a search warrant at McLean's house and arrested him. They found clothing that exactly matched the apparel worn by one of the robbery suspects. They also found ammunition, magazines, and a MAK 90 assault rifle.

McLean initially said he was not involved in the robbery. After further questioning, McLean admitted he committed the robbery using "Gucci's" gun, but he kept on the safety. McLean, who had been in the military, wanted to see the videotape of

3

the robbery so he could "time" himself and see how long it took. McLean said he did not have the jewelry; he had sold it.

Defendant's palm prints were found on broken glass and the display counter at the jewelry store.

After being advised of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, defendant agreed to give a statement and confirmed his nickname was "Gucci." Defendant denied any involvement in the robbery and said he had never been to the jewelry store. The police advised defendant that his fingerprints were found there. Defendant did not respond to that information and simply said that he loved his children.

**Procedural history**

On April 9, 2012, a felony complaint was filed against defendant and McLean, charging them with second degree robbery.

On October 9, 2012, defense counsel expressed a doubt as to defendant's competence to stand trial. The court suspended criminal proceedings and appointed an expert to examine defendant.

On December 11, 2012, the court reviewed the expert's report, found defendant was competent, and reinstated criminal proceedings.

On September 13, 2013, an information was filed charging defendant and McLean with count I, second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c));[2] and that McLean personally used a firearm during the commission of the offense (§ 12022.53, subd. (b)). As to defendant, it was alleged that a principal in the offense was armed with a firearm (§ 12022, subd. (a)(1)), and defendant had served a prior prison term (§ 667.5, subd. (b)).

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

**Plea proceedings**

On July 3, 2014, the court convened a hearing for both defendant and McLean, and was advised that both parties would enter into plea agreements. McLean was going to plead no contest to second degree robbery and admitted the firearm enhancement, for a maximum term of 12 years and dismissal of charges in a pending case.

Defendant's attorney said defendant would enter a plea to second degree robbery and admit the firearm and prior prison term enhancement, for a maximum term of five years and dismissal of all other pending cases. Defendant's attorney stated the agreement was "a package contingent on Mr. McLean pleading." Defendant initialed and signed the change-of-plea form in court.

The court separately advised McLean and defendant of their constitutional rights, the terms of their individual plea agreements, and obtained their waivers; found a factual basis for their pleas; and found they entered their pleas knowingly and voluntarily, and pursuant to the stated agreements.

As to defendant, the court advised him that he was going to plead to second degree robbery with two enhancements, and he would have "a five-year lid" and asked he if understood the agreement. Defendant said yes. In response to the court's questions, defendant said he fully understood the plea agreement, he had talked to his attorney, and he understood what he was doing. Defendant acknowledged he had just initialed and signed the change-of-plea form, and he fully understood everything on the form. Thereafter, defendant pleaded no contest to second degree robbery, and admitted the firearm and prior prison term enhancements.

**Sentencing Hearing**

On September 11, 2014, the court conducted the sentencing hearing for defendant. Defense counsel asked to read aloud a letter which defendant had written to the court,

5

which he wrote "when he had time to really reflect how he felt about this case." The court agreed. Counsel read as follows:

> " 'Thank you for taking the time to read this letter or hear my attorney read it in open court and hearing my case. My name is Corey Gray. I'm a father of three, two boys and a little girl. I have been incarcerated for the last 28 months and this is the longest I have been away from my family. I have completed Turning Point, a rehabilitation program, and I have tried to be a productive member of my community. I—however, I fully recognize the conduct was terrible in this case. Most of my recent criminal charges stem from my involvement with the usage of drugs and the company it brings. Nonetheless, I am convinced that at the age of 29, I can prevent future related incidents by living in a—living a sober life with positive influences and by simply not associating myself with people who make unwise life choices. I am remorseful for the involvement. *I'm humbly asking that you impose four years. Please strike either the prison prior or the vicarious arming allegation. [¶] So please strike either of the enhancements.*' " (Italics added.)

Defendant also addressed the court and said he was sorry for what he did, and asked the court to "bless me with the four years or three" so he could return to his family and start life over again.

Defense counsel asked the court to impose four years by selecting the mitigated term of two years plus both enhancements, and noted that he played a lesser role in the robbery since he was not armed.

The prosecutor argued five years was appropriate based on the terms of the plea agreement since defendant and his accomplice entered a store with intent to steal and his accomplice had a gun. Defendant had multiple violations of probation and parole.

The court found the midterm of three years for robbery was appropriate. Defendant's juvenile adjudications and adult convictions were numerous and increasing in seriousness, he had performed poorly on parole, and there were no unusual circumstances to strike the arming allegation. The court also imposed two consecutive

6

one-year terms for the arming and prior prison term enhancements, for an aggregate term of five years.

On September 23, 2014, defendant filed a timely notice of appeal and his attorney requested a certificate of probable cause as follows:

> "Defendant was given the option of accepting a 5 year lid and 1 strike or a 4 year stipulated term and 2 strikes. I recommended that he accept the 5 year lid and 1 strike. The defendant received 5 years at sentencing.

> "The defendant believes I forced him to accept the 5 year deal, when he wanted the 4 year stip deal all along. D[efendant] also believes the court should have given him 4 years as his sentence. D[efendant] believes 5 years is an unreasonable and unjust sentence.

> "The defendant asked me to file this notice of appeal."

Defendant's request for a certificate of probable cause was denied.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court. By letter on January 8, 2015, we invited defendant to submit additional briefing.

Defendant has sent several letters to this court and his appointed appellate counsel, and asserts that his attorney said he would get four years; he was promised that he would get four years; he would have never accepted a deal for five years; he should have received probation in the first place; he was tricked into accepting five years; and he now wanted four years.

However, issues going to the validity of a plea require compliance with section 1237.5 and a certificate of probable cause. (*People v. Brown* (2010) 181 Cal.App.4th 356, 359.) "Thus, for example, a certificate must be obtained when a defendant claims that a plea was induced by misrepresentations of a fundamental nature [citation] …."

7

(*People v. Panizzon* (1996) 13 Cal.4th 68, 76.)  Defendant failed to obtain a certificate of probable cause and his issues are not cognizable on appeal.

Moreover, defendant's assertions about his plea are refuted by the record. Defendant was repeatedly advised that he was entering into a negotiated disposition with a maximum term of five years, and that five other pending cases would be dismissed.  At the sentencing hearing, defendant addressed the court through his lengthy letter and statements, asked for leniency, and requested a four-year term instead.  In doing so, he essentially acknowledged his understanding that he had agreed to the five-year term. Defendant never stated that he had been tricked into accepting the plea or that he should receive probation.  Defense counsel clarified that the court could impose four years based on the mitigated term for robbery plus the two enhancements, and argued four years was appropriate because of defendant's lesser role in the robbery.  The court rejected the argument and imposed five years, consistent with the negotiated disposition.  Defendant's contentions that he was tricked into accepting the plea are meritless.  (See, e.g., *People v. Knight* (1987) 194 Cal.App.3d 337, 344 ["Postplea apprehension (buyer's remorse) regarding the anticipated sentence, even if it occurs well before sentencing, is not sufficient to compel the exercise of judicial discretion to permit withdrawal of the plea of guilty …"]; *People v. Nance* (1991) 1 Cal.App.4th 1453, 1456 ["[a] plea may not be withdrawn simply because a defendant has changed his mind"].)

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.